Blake D. Miller (#4090)
bmiller@aklawfirm.com
Jared D. Scott (#15066)
jscott@aklawfirm.com
ANDERSON & KARRENBERG
50 W. Broadway, Suite 700
Salt Lake City, UT 84101-2035
Telephone: 801-534-1700
Fax: 801-364-7697

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH**

| | |
|---|---|
| **VICIDIEM, INC., a Utah corporation, and CRAIG HUTCHINSON, an individual,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**PAUL CHRISTENSEN, an individual, and FIBERWAVE TECHNOLOGIES, LLC, a Utah limited liability company; DEAN NORTH, an individual; STEVEN TWEEDIE, an individual; JOHN DOES I – X, and DOE CORPORATIONS I – X.**<br><br>**Defendants.** | **FIRST AMENDED COMPLAINT**<br><br>**(Jury Demanded)**<br><br>Case No. 2:19-cv-00358-DB<br><br>Judge Dee Benson |

Plaintiffs, Vicidiem, Inc. ("Vicidiem") and Craig Hutchinson ("Hutchinson" and collectively with Vicidiem, "Plaintiffs") hereby complain against Defendants, Paul Christensen ("Christensen"), Fiberwave Technology, LLC ("Fiberwave") Dean North ("North") and Steven Tweedie ("Tweedie"), John Does I – X and Doe Corporations I - X and allege as follows:

## PARTIES

1. Vicidiem, Inc. is a Utah corporation with its principal place of business in Salt Lake County, Utah.

2. Craig Hutchinson is an individual residing in Utah.

3. Paul Christensen is an individual residing in Utah.

4. Fiberwave Technology, LLC is a Utah limited liability company with its principal place of business in Utah.

5. Dean North is an individual residing in Utah.

6. Steven Tweedie is an individual residing in Utah.

7. John Does I – X and Doe Corporations I – X are individuals and companies whose identities are currently unknown, but who have participated in the conduct of Defendants as alleged below.

## JURISDICTION AND VENUE

8. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves claims arising under the laws of the United States.

9. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events and omissions which give rise to this First Amended Complaint took place in this district.

## GENERAL ALLEGATIONS

10. Vicidiem provides, among other services, wholesale internet, television, and landline telephone service to apartment complexes and other multi-unit developments.

11. These services are sometimes delivered via commercial fiber optic lines in "bulk."

12. Hutchinson is a principal and founder of Vicidiem.

13. At all relevant times, Christensen was and is an attorney and member of the Utah State Bar. As such, he was and is bound by all ethical rules incidental to his role as an attorney.

14. From 2012 to approximately December 2013, Christensen represented Vicidiem, Hutchinson and another equity owner of Vicidiem, Brent Brimley, on a part-time basis.

15. As an attorney, Christensen is subject to the Utah Rules of Professional Conduct.

16. In late 2013, Christensen proposed an alternative working relationship by which he would work full-time for Vicidiem.

17. Christensen drafted and presented to Hutchinson an agreement (the "Service Agreement"), setting forth the proposed terms of the agreement.

18. At the time Christensen drafted and presented the proposed Service Agreement to Hutchinson, Christensen advised Hutchinson that he should continue to be treated as an independent contractor.

19. Since Christensen was Vicidiem's attorney, Vicidiem and Hutchinson reasonably relied that Christensen's request comported with applicable law.

20. Following execution of the Service Agreement and consistent with his request and instruction, Christensen continued working for Vicidiem as an independent contractor with his primary work location in Vicidiem's offices.

21. Among other things, Christensen continued to represent Plaintiffs as an attorney with respect to various legal transactions and disputes.

22. Indeed, Christensen repeatedly acknowledged his role, and held himself out, as an attorney for Vicidiem.

23. For example, until at least the instant lawsuit was filed, Christensen's LinkedIn page identified him as the "COO and General Counsel of Vicidiem."

24. Likewise, he represented Vicidiem in legal negotiations and disputes, consistently holding himself out as Vicidiem's general counsel.

25. Christensen was responsible for advising on legal matters and drafting legal documents, such as contracts with Vicidiem customers and vendors.

26. As a result of his legal representation of Vicidiem, Christensen gained inside knowledge of privileged information regarding Vicidiem's business and legal strategies, including, without limitation, privileged information and trade secrets regarding technology, software development, business strategy, contract proposals and terms, pricing, duration, and key C level executives for Vicidiem's customers and vendors and strategic partners.

27. Christensen also acquired privileged information and trade secrets about upcoming and potential projects that Vicidiem intended to monetize, including a full list of all projects and contacts in the company's backlog and pipeline through 2021.

28. In addition to the privileged information listed above, Vicidiem develops and utilizes certain programs, information, compilations, methods, techniques and processes that derive independent economic value from not being generally known, and not be readily ascertainable by proper means, by individuals unaffiliated with Vicidiem (the "Trade Secrets").

29. The Trade Secrets consist of information that is used to service Vicidiem customers and to maximize value out of services and products provided by Vicidiem vendors, including the design and implementation of unique systems used to deliver digital products to customers.

30. While some of the Trade Secrets stand alone and independently derive independent economic value from not being generally known like certain specific processes, programs, and techniques, others are part of a compilation of information that is not, as a whole, readily ascertainable and which derive significant economic value.

31. Vicidiem has attempted to maintain the secrecy of such Trade Secrets by, among other things, maintaining strict access to networks, verbally training employees about protecting information, and having Christensen draft agreements preventing Vicidiem employees from soliciting Vicidiem customers and vendors, thus negating incentives to misuse trade secrets.

32. Christensen acquired information regarding the Trade Secrets through his work as an attorney for Vicidiem.

33. Christensen was tasked with the responsibility of drafting non-solicitation and other documents restricting employees' ability to solicit Vicidiem's customers and employees. Such documents drafted by Christensen on behalf of Vicidiem prohibited the employee from, among other things, soliciting business from or accepting offers from any of Vicidiem's customers. Christensen performed this legal work with the understanding of the need and importance of protecting Vicidiem's Trade Secrets and privileged information.

34. For example, when a senior engineer left and attempted to form a competitor to Vicidiem, Christensen reached out on behalf of Vicidiem to prevent him from directly competing and to protect Vicidiem's configurations and Trade Secrets.

35. As part of his work as an independent contract attorney and to comply with Vicidiem's request that Christensen draft agreements appropriate to protect its company practices,

configurations and trade secrets, Christensen drafted the non-solicitation agreements for Tweedie and North.

36. Through this representation, Christensen obtained confidential information about Vicidiem's employees, including the importance of such employees to Vicidiem and the respective terms of their employment.

37. Christensen was subject to Utah Rule of Professional Conduct 1.8(b), which provides that "[a] lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules."

38. Similarly, under Utah Rule of Professional Conduct 1.9(c)(1), Christensen was prohibited from "us[ing] information relating to the representation to the disadvantage of Vicidiem and Hutchinson after his representation ended.

39. After repeated issues with the lack of acceptable quality of Christensen's work product, Plaintiffs lost confidence in him and terminated his independent contractor services on Friday, March 29, 2019.

40. At the time of Christensen's termination, he was in possession of a laptop computer owned by Vicidiem, which he had used to draft customer contracts and other legal documents on behalf of Vicidiem.

41. Despite requests from Plaintiffs, Christensen failed to return this laptop computer to Vicidiem, notwithstanding that it still contained privileged and confidential information and trade secrets belonging to Vicidiem, including but not limited to customer contact information, contractual terms (expiration dates, pricing, etc.), and employee information.

42. As a result of Defendants' interference and solicitation, three key Vicidiem employees, including North and Tweedie, abruptly resigned without notice on Thursday, April 4, 2019.

43. On or about June 20, 2016, Tweedie entered into a Non-Solicit Agreement with Vicidiem (the "Tweedie Agreement").

44. In the Tweedie Agreement, Tweedie agreed that following his employment with Vicidiem, he would not "solicit business from any of [Vicidiem]'s customers."

45. Tweedie also agreed that he would not "accept solicitation to do business with" any of Vicidiem's customers.

46. Tweedie also agreed that he would not "circumvent" Vicidiem.

47. Tweedie obtained Trade Secrets as part of his employment with Vicidiem.

48. On or about, January 1, 2017, North entered into a Non-Solicit Agreement with Vicidiem (the "North Agreement").

49. In the North Agreement, North agreed that following his employment with Vicidiem, he would not "solicit business from any of [Vicidiem]'s customers."

50. North also agreed that he would not "accept solicitation to do business with" any of Vicidiem's customers.

51. North also agreed that he would not "circumvent" Vicidiem.

52. Upon information and belief, on April 2, 2019, Christensen, Tweedie, North, and others formed Fiberwave.

53. Within days, Plaintiffs were informed that Christensen, North, and Tweedie with Fiberwave had reached out to and set up meetings with Vicidiem customers and vendors.

54. For example, Christensen and Tweedie met with a principal of a key customer of Vicidiem on or about April 25, 2019.

55. During the discussion, Christensen and Tweedie pitched Fiberwave services to Vicidiem's customer.

56. Additionally, on or about April 19, 2019, a Vicidiem employee saw an email address for Fiberwave on the desk of a representative for another Vicidiem customer in Heber City, Utah.

57. Christensen and Fiberwave also reached out to another developer that Vicidiem had worked with to discuss a future project that Christensen was only aware of as a result of his legal representation of Vicidiem.

58. During that conversation, Christensen informed the developer that he and Fiberwave had hired the two best engineers in the state for this type of network and service deployment and encouraged the developer to use Fiberwave for his upcoming project.

59. Christensen and Fiberwave falsely asserted that as a result of Christensen and the engineers leaving, Vicidiem no longer had the capability of supporting the developer's upcoming project.

60. Upon information and belief, Christensen and Fiberwave are having similar conversations and making similar false representations to other Vicidiem customers and vendors.

61. Fiberwave has continued its unlawful activities by using Vicidiem's Trade Secrets and other privileged information to solicit existing and prospective clients of Vicidiem, including on projects that Christensen worked on as an independent contractor attorney for Vicidiem.

62. Vicidiem is aware of these activities taking place in even the last couple of weeks prior to the filing of this document.

63. On October 1, 2019, Dean North was seen by a Vicidiem employee doing a site walk on the second phase of a large project of which Vicidiem has the contract for the first phase. The following week, the project developer informed Vicidiem that it was not getting the contract for the second phase of the project with no justification. The developer would not communicate as to who was awarded the contract or any reason for the change.

64. On October 21, 2019, another customer informed Vicidiem that it was terminating its agreement with Vicidiem and was thereafter planning to sign an agreement with Fiberwave.

65. Fiberwave solicited this customer using confidential and privileged information and trade secrets, including contractual terms.

66. Fiberwave, Christensen, North, and Tweedie have also been utilizing Vicidiem's Trade Secrets and privileged information to solicit customers with whom Vicidiem did not have a previous relationship, including, among others, Kartchner Homes.

67. Vicidiem purchases fiber service in bulk from fiber carriers like CenturyLink, Level3 and UTOPIA, among others.

68. Christensen and Fiberwave reached out to and approached Utopia to become an authorized reseller of fiber services to directly compete with Vicidiem.

69. Defendants have continued to work with Utopia and other vendors to bid projects on which Defendants are using and planning to use Vicidiem's Trade Secrets and privileged information.

70. The identity of these customers and their individual contract terms are strictly privileged and constitute some of Vicidiem's most valuable Trade Secrets.

71. Moreover, using Vicidiem's confidential information Christensen obtained during his time as Plaintiffs' attorney to the competitive disadvantage of Plaintiffs violated Utah Rule of Professional Conduct 1.8(b).

72. Christensen has not complied with the terms of the Service Agreement, thus excusing any non-performance by Plaintiffs.

73. For example, under the terms of the Service Agreement, Christensen agreed as follows:

> 6. **Non-Circumvention; Good Faith; Cooperation:** It is understood that mutual trust, good faith and cooperation shall exist at all times between the Parties in order to accomplish the purposes of this Agreement. The Parties agree that neither Party shall in any way circumvent, undermine or obstruct the rights or efforts of the other to develop and market the Services and commercial concepts of the Vicidiem; nor shall either Party interfere with or attempt to appropriate business opportunities from the relationships of the other Party; nor shall the Parties act in a manner that would adversely affect the relationships between actual or prospective customers, vendors, licensors, licensees, affiliates, investors or lendors.

74. As described below, Christensen breached the Service Agreement by acting in concert with others to circumvent, undermine, and obstruct Vicidiem's business.

75. Christensen also interfered with, and attempted to appropriate business opportunities from, the relationships of Vicidiem and Hutchinson.

76. Christensen also acted in a manner that would adversely affect the relationship of Vicidiem with its actual and prospective customers, vendors, licensors, licensees, affiliates, investors, and lenders.

77. The Service Agreement also contemplated that Christensen would only be paid on a pro rata basis when he worked less than forty hours per week.

78. Christensen regularly failed to work forty hours per week and did not make his best efforts on behalf of Vicidiem.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY (Against Christensen)

79. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

80. As an attorney and contractor for Vicidiem, Christensen owed fiduciary duties to Vicidiem.

81. Christensen breached these fiduciary duties by, among other things, using Vicidiem's attorney-client privileged information to solicit Vicidiem customers and employees and using Vicidiem's privileged information to its disadvantage without obtaining written consent, and other related and similar acts.

82. Vicidiem has suffered and continues to suffer irreparable harm to its business as a result of these breaches, including loss of experienced employees, loss of goodwill of customers, threatened losses of business and future opportunities.

83. In light of Christensen's role as an attorney and his use of privileged information to the disadvantage of Vicidiem, these breaches are particularly egregious and justify awards of punitive damages.

84. Similarly, the irreparable nature of the harm caused by the breaches justifies preliminary and permanent injunctive relief.

85. Vicidiem is also entitled to its reasonable attorneys' fees.

**<u>SECOND CAUSE OF ACTION FOR TORTIOUS INTERFERENCE</u>**
**<u>(Against All Defendants)</u>**

86. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

87. Defendants intentionally interfered with Vicidiem's existing and potential economic relationships with its employees and customers.

88. Defendants' means, using attorney-privileged information, is contrary to statutory, regulatory, and common law principles and, as to Christensen, violates all norms of the attorney-client relationship.

89. Defendants' means were also improper because they made false representations about Vicidiem and its capacity and ability to continue servicing its existing and new contracts.

90. As a result of Defendants' interference by use of attorney-client privileged information and other improper means, Vicidiem has suffered and continues to suffer irreparable harm to its business interests, goodwill, and prospective income.

91. Defendants' interference was willful and malicious and manifested a knowing and reckless indifference toward, and a disregard of, the rights of Vicidiem, justifying an award of punitive damages.

92. Plaintiffs are also entitled to preliminary and permanent injunctive relief.

**THIRD CAUSE OF ACTION FOR VIOLATIONS OF THE**
**<u>DEFEND TRADE SECRETS ACT</u>**
**<u>(Against All Defendants)</u>**

93. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

94. Vicidiem is the rightful legal and/or equitable owner of the Trade Secrets.

95. The Trade Secrets constitute trade secrets under the Defend Trade Secret Act. 18 U.S.C. §1836 *et seq*.

96. These trade secrets are related to a product or products that are used or intended to be used in interstate commerce as Vicidiem services customers in several states.

97. Defendants misappropriated Vicidiem's Trade Secrets by obtaining, maintaining, and using them without proper authorization.

98. Defendants knew the Trade Secrets were acquired as part of an attorney-client and otherwise confidential relationship requiring Defendants to maintain strict confidentiality and secrecy and not to use these Trade Secrets for their own benefit and purposes.

99. Defendants also knew that these Trade Secrets were supposed to be kept confidential and not used to solicit Vicidiem customers and contractors.

100. Defendants' misappropriation of the Trade Secrets has caused and continues to cause irreparable harm to Vicidiem.

101. In addition to damages, Vicidiem is entitled to recover punitive damages because the misappropriation was willful and malicious.

102. In addition to damages and fees, Vicidiem is entitled to recover any benefit accrued to Defendant as a result of the misappropriation.

103. Vicidiem is also entitled to preliminary and permanent injunctive relief.

**FOURTH CAUSE OF ACTION FOR VIOLATIONS**
**OF THE UTAH TRADE SECRETS ACT**
**(Against All Defendants)**

104. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

105. Vicidiem is the rightful legal and/or equitable owner of the Trade Secrets with respect to its customer and client information, pricing, terms, contact information, processes, techniques programs, and the compilation of this and other information.

106. This information constitutes trade secrets under Utah Code §13-24-2.

107. Defendants misappropriated Vicidiem's Trade Secrets by, among other things, wrongfully obtaining and retaining them and then using them to solicit Plaintiffs' customers and clients.

108. Defendants' misappropriation of the Trade Secrets caused Vicidiem to suffer damages in an amount to be proven at trial.

109. Defendants' misappropriation was willful and malicious, so Vicidiem is entitled to actual damages, unjust enrichment, and punitive or exemplary damages in amounts to be proven at trial.

110. Vicidiem is similarly entitled to preliminary and permanent injunctive relief.

## FIFTH CAUSE OF ACTION FOR BREACH OF CONTRACT
## (Against Christensen)

111. Plaintiffs incorporate all preceding paragraphs as if fully set forth herein.

112. Christensen breached the Service Agreement.

113. Plaintiffs performed all of their obligations under the Service Agreement or were excused from doing so.

114. Christensen breached by, among other things, not working the requisite number of hours, not putting forth best efforts to fulfill his obligations, by acting to circumvent, undermine or obstruct the rights and efforts of Vicidiem to develop and market its products, attempting to appropriate business opportunities from the relationships of Plaintiffs, and acting in a manner that would adversely affect the relationships between actual or prospective vendors, licensors, licensees, affiliates, investors or lenders.

115. Christensen also breached the covenant of good faith and fair dealing by engaging in conduct that intentionally destroyed or injured Plaintiffs' right to receive the fruits of the Service Agreement.

116. It is clear from the parties' course of dealing and settled custom of attorneys representing clients, that the parties would have undoubtedly agreed that Christensen's current actions would be in breach of the Service Agreement if they had considered and addressed it.

117. Christensen's breaches caused Plaintiffs to suffer significant monetary damages and losses.

**SIXTH CAUSE OF ACTION FOR BREACH OF CONTRACT**
**(Against North and Tweedie)**

118. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

119. The Tweedie Agreement and the North Agreement are valid and enforceable agreements.

120. Plaintiffs fulfilled or were excused from fulfilling all of their obligations under the Tweedie Agreement and the North Agreement.

121. Tweedie breached the Tweedie Agreement by, among other things, soliciting Vicidiem customers on behalf of Fiberwave.

122. North breached the North Agreement by, among other things, soliciting Vicidiem customers on behalf of Fiberwave.

123. North and Tweedie's breaches and circumvention of Plaintiffs were intentional and have caused the loss of commissions and other profits.

124. North and Tweedie's breaches have caused other damages, including consequential damages.

125. Plaintiffs are entitled to judgment in their favor in an amount to be proven at trial, including consequential damages and all other damages referred to and allowed under the North Agreement and the Tweedie Agreement respectively.

## SEVENTH CAUSE OF ACTION FOR LEGAL MALPRACTICE (Against Christensen)

126. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

127. Christensen acted as legal counsel for Vicidiem in numerous transactions, disputes, and at other times.

128. Christensen's legal work included, among other things, drafting contracts and terms of customer, employee, and other agreements to meet objectives of Vicidiem.

129. Christensen's legal work fell below the applicable standard of care for an attorney as he consistently made numerous mistakes, typos, inconsistent customer service agreements and other errors or omissions.

130. Among many other instances, Christensen filled in the wrong term for a contract before having it signed by the appropriate parties, costing Vicidiem approximately $300,000.00.

131. By way of another example, to the extent that the Tweedie Agreement and the North Agreement are not enforceable or otherwise do not fully prevent Tweedie and North from harming Vicidiem through misappropriation of trade secrets, soliciting clients and vendors, or other means, Christensen's drafting of these agreements fell below the standard of care.

132. In other instances, Christensen was supposed to monitor contract expirations to allow Vicidiem to lock customers into continuing long-term contracts. Christensen failed to do this, allowing some contracts to convert to month-to-month status. This failure then allowed Fiberwave to successfully pitch its services to some of these customers who otherwise would have been locked into longer term contracts.

133. Christensen's failure to meet the applicable standard of care caused Vicidiem significant monetary and reputational damages.

134. Vicidiem is entitled to recover its damages in an amount to be proven at trial.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court enter Judgment in the Plaintiffs' favor as follows:

1. On Plaintiffs' First Cause of Action for Breach of Fiduciary Duty, Plaintiffs ask for judgment in an amount to be proven at trial; punitive damages; preliminary and permanent injunctive relief; and an award of attorneys' fees.

2. On Plaintiffs' Second Cause of Action for Tortious Interference, Plaintiffs ask for judgment in an amount to be proven at trial; punitive damages; and preliminary and permanent injunctive relief.

3. On Plaintiffs' Third Cause of Action for Violations of the Defend Trade Secrets Act, Plaintiffs ask for judgment in an amount to be proven at trial; punitive damages; and preliminary and permanent injunctive relief.

4. On Plaintiffs' Fourth Cause of Action for Violations of the Utah Trade Secret Act, Plaintiffs ask for judgment in an amount to be proven at trial; punitive damages; temporary, preliminary, and permanent injunctive relief; and an award of attorneys' fees.

5. On Plaintiffs' Fifth Cause of Action for Breach of Contract, Plaintiffs seek a judgment in an amount to be proven at trial, including an award of consequential and/or other special damages; preliminary and permanent injunctive relief, and all other damages or relief identified in the agreements.

6. On Plaintiffs' Sixth Cause of Action for Breach of Contract, Plaintiffs seek a judgment in an amount to be proven at trial, including an award of consequential and/or other special damages; preliminary and permanent injunctive relief, and all other damages or relief identified in the agreements.

7. On Plaintiffs' Seventh Cause of Action for Legal Malpractice, Plaintiffs seek judgment in an amount to be proven at trial.

8. On all claims, Plaintiffs seek an award of costs.

9. Plaintiffs also seek any other relief to which they are entitled.

DATED: October 24, 2019.

ANDERSON & KARRENBERG

*/s/ Jared D. Scott*
Blake D. Miller
Jared D. Scott
*Attorneys for Plaintiffs*