CHRISTENSEN & JENSEN, P.C.
Roger P. Christensen, 0648
15 West South Temple, Suite 800
Salt Lake City, Utah 84101
Telephone: 801-323-5000
Facsimile: 801-355-3472
roger.christensen@chrisjen.com

CALL & JENSEN, APC
Kent R. Christensen, California Bar No. 253815 (admitted *Pro Hac Vice*)
610 Newport Center Drive, Suite 700
Newport Beach, CA 92660
Tel: 949-717-3000
Fax: 949-717-3100
kchristensen@calljensen.com

*Attorneys for Defendants and Counterclaimants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| VICIDIEM, INC., a Utah Corporation, and CRAIG HUTCHINSON, an individual,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>Paul Christensen, an individual, and FIBERWAVE TECHNOLOGIES, LLC, a Utah limited liability company; DEAN NORTH, an individual; STEVEN TWEEDIE, an individual; JOHN DOES I-X, and Doe Corporations I-X.<br><br>　　　　Defendants. | Case No.  2:19-cv-00358 DBB<br><br>**DEFENDANT AND COUNTERCLAIMANT PAUL CHRISTENSEN'S MOTION TO DISQUALIFY COUNSEL**<br><br>Honorable Dee Benson<br><br>FAC Filed:　　　October 24, 2019<br>Complaint Filed:　May 22, 2019<br>Trial Date:　　　None Set |
| Paul Christensen, an individual; and Dean North, an individual,<br><br>　　　　Counterclaimants,<br><br>vs.<br><br>VICIDIEM, INC. a Utah Corporation, | |

and   CRAIG   HUTCHINSON,   an
individual,

      Counter-Defendants.

# **TABLE OF CONTENTS**

Page(s)

I.    INTRODUCTION ................................................................................. 6

II.   PROCEDURAL BACKGROUND ....................................................... 6

III.  FACTUAL BACKGROUND ............................................................... 9

    A.    Hutchinson Uses Vicidiem For His Own Benefit ........................... 9

    B.    Vicidiem's Interests are in Direct Conflict with
           Hutchinson's .................................................................................. 10

    C.    Anderson & Karrenberg Have Refused To Withdraw As
           Vicidiem's Counsel ....................................................................... 14

IV.   ANDERSON & KARRENBERG CANNOT CONTINUE TO
       REPRESENT BOTH VICIDIEM AND HUTCHINSON ...................... 16

    A.    The Court Has Discretion To Disqualify Counsel ........................ 16

    B.    The URCP Prohibit Counsel From Representing Adverse
           Clients .......................................................................................... 18

          *1.*    Anderson & Karrenberg Is Clearly Conflicted In Its
                   Continued Representation of Both Vicidiem and
                   Hutchinson ........................................................................ 18

          *2.*    Vicidiem's Shareholders Will Be Greatly Prejudiced
                   If Present Counsel Are Allowed to Continue
                   Representing Vicidiem ....................................................... 19

          *3.*    Anderson & Karrenberg's Conduct Demonstrates a
                   Significant Diminution of Their Effectiveness
                   Particularly Regarding Vicidiem ........................................ 21

          *4.*    The Appointment of New Counsel Will Not Create a
                   Hardship for Either Vicidiem or Hutchinson ..................... 22

          *5.*    The Early Stage of This Litigation Easily Allows for
                   New Counsel ...................................................................... 22

    C.    The Conflict Between Hutchinson and Vicidiem Cannot Be
           Waived .......................................................................................... 22

V.    CONCLUSION .................................................................................... 24

1

## **TABLE OF AUTHORITIES**

2

3

Page(s)

**Federal Cases**

*Bell Atlantic Corp. v. Bolger,*
   2 F.3d 1304 (3d Cir.1993) ................................................................20, 21, 24

*Bodily v. Intermountain Health Care Corp.,*
   649 F.Supp. 468 (D. Utah 1986) ....................................................................17

*Cannon v. U.S. Acoustics Corp.,*
   398 F.Supp. 209 (N.D.Ill.1975) ...............................................................20, 23

*Celgene Corp. v. KV Pharmaceutical Co.,*
   2008 WL 2937415 (D.N.J.2008) ...................................................................23

*Cole v. Ruidoso Mun. Sch.,*
   43 F.3d 1373 (10th Cir. 1994) ...............................................................16, 17

*Fanning v. John A. Sheppard Mem'l Ecological Reservation, Inc.,*
   No. 2:18-CV-01183, 2018 WL 5316009 n. 1 (S.D.W. Va. 2018) ..............................20

*Firestone Tire & Rubber Co. v. Risjord,*
   449 U.S. 368 (1981) ...................................................................................17

In re *Oracle Sec. Litig.,*
   829 F.Supp. 1176 (N.D. Cal. 1993) ..........................................................20, 23

*Lewis v. Shaffer Stores Co.,*
   218 F.Supp., 238 (S.D.N.Y 1963) ...........................................................20, 23

*Messing v. FDI, Inc.,*
   439 F.Supp. 776 (D.N.J.1977) ...............................................................21, 23

*Parkinson v. Phonex Corp.,*
   857 F.Supp. 1474 (Utah 1994) .....................................................................17

*Redd v. Shell Oil Co.,*
   518 F.2d 311 (10th Cir. 1975) .....................................................................16

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CALL &
JENSEN

*SLC Ltd. v. Bradford Group West, Inc.*,

    999 F.2d 464 (10th Cir. 1993) ........................................................................17

*United States v. Clarkson*,

    567 F.2d 270 (4th Cir. 1977) ..........................................................................17

*United States v. Emigration Improvement Dist.*,

    No. 2:14-CV-701-JNP, 2016 WL 4148251 (D. Utah Aug. 4, 2016) ..........................23

*United States v. Trafficante*,

    328 F.2d 117 (5th Cir. 1964) ..........................................................................18

**State Cases**

*Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.*,

    970 P.2d 1273 (Utah 1998) ........................................................... 16, 17

*Dansie v. City of Herriman*,

    2006 UT 23, 134 P.3d 1139 (Utah 2006) ............................................. 17

*In re Marriage of Wixom & Wixom*,

    332 P.3d 1063 (Wash. Ct. App. 2014) ................................................. 20

**State Rules**

Rule 1.7 ........................................................................... 15, 16, 19, 20

Rule 1.8 ............................................................................... 4, 5

Rule 1.13 ......................................................................... 15, 16, 19, 20

Rule 1.13(g) .......................................................................... 19, 20

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

3          Defendants and Counterclaimants' Paul Christensen and Dean North filed

4    counterclaims against both Craig Hutchinson and Vicidiem, Inc. ("Plaintiffs") alleging

5    Hutchinson has been stealing corporate opportunities and assets from Vicidiem through

6    a variety of schemes.  Despite the actual and significant conflicts of interest between

7    Plaintiffs' that cannot properly be waived, Plaintiffs' counsel, Anderson & Karrenberg,

8    refuses to withdraw.  Amazingly, the stark conflicts between Plaintiffs were not even on

9    counsel's radar until Defendants expressed concern over their dual representation six-

10   weeks ago.  Rather than ask the Court to appoint independent counsel as Defendants

11   suggested, or even attempt to seek independent counsel to represent Vicidiem,

12   Anderson & Karrenberg sought multiple extensions from Defendants to respond to

13   Defendants' Counterclaims and used the time to file a *joint* Motion to Dismiss a few of

14   the Christensen's Counterclaims, and *joint* answers to the other counterclaims that treat

15   Plaintiffs as one in the same.  Although Anderson & Karrenberg have ignored

16   Defendants' concerns, they cannot ignore the Rules of Professional Conduct that

17   prohibit an attorney from representing a client who is directly adverse to another. (*See*

18   URCP 1.7 and 1.13). Moreover, Anderson & Karrenberg cannot obtain written consent

19   from Vicidiem because this conflict is simply not waivable, nor is there a proper official

20   working for Vicidiem that could waive these egregious conflicts.

21         Anderson & Karrenberg cannot represent both Hutchinson and Vicidiem, nor can

22   Hutchinson continue to control Vicidiem's defense where the claims put him at direct

23   odds with Vicidiem's interests and shareholders. Because Plaintiffs' counsel refuses to

24   do the right thing on their own, they must be disqualified by this Court and Defendants'

25   Motion should be granted.

26   **II.   PROCEDURAL BACKGROUND**

27         Plaintiffs filed suit against Fiberwave and Christensen on May 22, 2019. (Dkt. 2).

28   In the original complaint, Plaintiffs alleged ten causes of action. (*Id*.).   Three of the

causes of action were asserted against Christensen based on a fabricated violation of Rule 1.8 of the Utah Rules of Professional Conduct alleging Christensen had failed to inform Hutchinson he may want to consult with counsel when the two negotiated and entered a contract wherein Christensen became the Chief Operating Officer of Vicidiem, and could receive 10% equity in Vicidiem. (*Id*.).   Through the complaint, Hutchinson attempted to void the agreement and take back the equity earned by Christensen over his five years at Vicidiem. (*Id*.).   The other causes of action related to Plaintiffs' claims that Christensen and Fiberwave (including North and Tweedie who were identified in the Complaint) had misappropriated trade secrets and wrongfully interfered with Plaintiffs' business relationships. (*Id*.)   The complaint made no effort to differentiate between causes of action asserted by Hutchinson, and those belonging to Vicidiem.

On June 24, 2019, Defendants filed a Motion to Dismiss the complaint asserting, inter alia, there could be no Rule 1.8 violation as it was indisputable that Hutchinson and Vicidiem were in fact represented by counsel as expressly stated in the agreement the parties had negotiated. (Dkt. 7).   Defendants also argued Plaintiffs failed to identify any trade secrets or acts of misappropriation, and that the other causes of action were preempted by the Trade Secrets Act.[1]   The Motion also pointed out the failure by Plaintiffs to differentiate which causes of action were asserted by Hutchinson, as opposed to Vicidiem, and in particular how both plaintiffs could assert claims for misappropriation of trade secrets. On October 7, 2019, the Court denied Defendants' Motion to Dismiss.

Sometime after the Court denied Defendants' Motion to Dismiss, Plaintiffs' counsel reached out to see if Defendants would stipulate to allowing them to amend the complaint.   Although Plaintiffs had "vehemently" denied that Plaintiffs were

---

[1] During this same time period, Christensen had filed suit in state court seeking $80,000 in unpaid back wages.  That case has since been stayed and the state court instructed Christensen to file his claims in this action.

represented by counsel in negotiating the agreement with Christensen that formed the basis of Hutchinson's claims against Christensen, they now conceded to having had counsel and their theory to take Christensen's Vicidiem stock was based on false allegations. The reason given for the needed amendment was to dismiss the three causes of action based on those false allegations, as well as a fourth cause of action that attempted to place liability on Christensen as a shareholder (which is contrary to Utah law). Plaintiffs also indicated they wanted to add North and Tweedie to the suit. Defendants agreed to allow the amendment.

On October 24, 2019, Plaintiffs filed the operative First Amended Complaint ("FAC"). (Dkt. 21). Like the original complaint, the FAC makes no distinction between the positions of Vicidiem and Hutchinson and asserts *all* causes of action on behalf of both parties (essentially treating Vicidiem as Hutchingson's alter ego).  The FAC also asserts breach of contract claims against North and Tweedie claiming they signed unauthenticated and never before seen Non-Solicitation Agreements. (*Id*.).  Plaintiffs subsequently dropped the breach of contract claims against North and Tweedie prior to them answering, but not before Defendants challenged both the veracity and enforceability of these documents in their opposition to Plaintiffs' Application for Preliminary Injunction. (Dkt. 44).

The same day Plaintiffs filed the FAC, they also filed an Application for a Temporary Restraining Order and a Preliminary Injunction. (Dkt. 25).  On October 31, 2019 the Court denied the request for a TRO. (Dkt. 35).  The Court held oral argument on the request for preliminary injunction on November 20, 2019 and then denied the application on December 23, 2019. (Dkt. 76).  The Court specifically held, "Plaintiffs have failed to demonstrate that there is a substantial likelihood of success on the merits of any of their claims, or that they will suffer irreparable harm…" (*Id.* at 2)

On November 7, 2019, Christensen and Fiberwave filed answers to the FAC. (Dkt. 37, 38). Christensen also asserted counterclaims which assert ten separate causes of action – six against Vicidiem for failure to pay owed wages, breach of contract, and

nine against Hutchinson for among others, breach of fiduciary duties, fraud, and unjust enrichment based upon Hutchinson's scheme of siphoning Vicidiem monies to his solely owned separate company, Microworks. (*Id*.). The Counterclaims raise significant conflicts of interest between Hutchinson and Vicidiem discussed below.

On November 11, 2019, North and Tweedie filed separate answers. (Dkt. 52, 53, respectively). North also filed counterclaims asserting claims for breach of contract and promissory estoppel based on Hutchinson's/Vicidiem's unfulfilled promises that Hutchinson would give North Vicidiem stock. (Dkt. 52).

On January 23, 2020, Plaintiffs filed an Answer to the North Counterclaim, an Answer to parts of the Christensen Counterclaim, as well as a Partial Motion to Dismiss Christensen's Counterclaims for bad faith, fraud and indemnity. (Dkts. 79-81). Plaintiffs' Answers do not differentiate between Vicidiem and Hutchinson in anyway, nor does their partial Motion to Dismiss. In fact, Plaintiffs have not even filed separate pleadings. Inexplicably, Vicidiem has joined in challenging the fraud claims against Hutchinson. (*Id.*)

## III. FACTUAL BACKGROUND

### A. Hutchinson Uses Vicidiem For His Own Benefit[2]

Hutchinson operates two companies – Microworks, Inc. ("Mworks") and Vicidiem, Inc. Hutchinson owns 100% of Mworks. (Dkt. 45, ¶4).[3] He also purports to own 50% of Vicidiem. Hutchinson is the CEO of both companies and is the sole director of Vicidiem's board of directors. (*Id*. at ¶7).

Hutchinson co-founded Vicidiem with another individual, Aaron Owen ("Owen"), in 2010. (*Id*. at ¶9). Owen no longer has an interest in the Company as Vicidiem repurchased his equity. Vicidiem currently has four shareholders, including Christensen who owns at least 10% of Vicidiem's stock. Vicidiem's second largest

---

[2] For the sake of brevity, Defendants have limited the following facts to those relevant to this Motion and reference documents already within the Court's record.

[3] Document 45 is the Declaration of Paul Christensen submitted to the court in opposition to Plaintiffs application for preliminary injunction.

CALL&
JENSEN

shareholder is Hutchinson's cousin, Brett Brimley.  (*Id.* ¶¶10-11).  Brimley is not involved in Vicidiem's operations and plays a passive role regarding the company. (*Id.* ¶11).  Hutchinson exercises control over Vicidiem's finances. (*Id.* ¶13).  No other Vicidiem employee or shareholder has access to, or is allowed to see, Vicidiem's financial records. (*Id.* ¶14).  In fact, Vicidiem's bookkeeper Courtnee Parks, is actually employed by Mworks. (*Id.*).

Defendant Dean North began working for Mworks in July 2014, as a network engineer. (Dkt. 46, ¶4)[4].  North worked for Mworks for approximately two and a half years. (*Id.* ¶8). In January 2017, North was hired by Vicidiem. (*Id.* ¶13).  Prior to being hired by Vicidiem, Hutchinson promised to give North stock in Vicidiem. (*Id.* ¶12).  At the time, Vicidiem was working to repurchase stock from Owen and Hutchinson promised to give North the stock Vicidiem bought back from Owen. (*Id.*)  Although Vicidiem was successful in purchasing the Owen stock, North was never given the equity as promised by Hutchinson. (*Id.* ¶14).  Hutchinson kept it for himself.  North resigned from Vicidiem on or around April 3, 2019. (*Id.* ¶46).

Defendant Christensen joined Vicidiem in January 2014 as its full-time Chief Operations Officer. (*See id.* ¶21, Ex. 1).  Christensen worked for and reported directly to Hutchinson. (*Id.* ¶22).  On March 29, 2019, Hutchinson terminated Christensen's employment. (*Id.* ¶28).  However, prior to terminating Christensen, Hutchinson told other Vicidiem employees that he was going to fire Christensen, and even told North he would give him Christensen's Vicidiem stock. (*Id.;* Dkt. 46, ¶44).

**B.    Vicidiem's Interests are in Direct Conflict with Hutchinson's**

As exhibited by the facts set forth above, and raised in Christensen's and North's counterclaims, actual conflicts of interest exist between Vicidiem and Hutchinson requiring Vicidiem to have its own independent counsel and independent contact at Vicidiem.  For instance:

---

[4] Document 46 is the Declaration of Dean North submitted to the court in opposition to Plaintiffs application for preliminary injunction.

- Hutchinson has unilaterally allocated Vicidiem stock - which was purchased by Vicidiem - to himself.  As part of two agreements between Vicidiem and its former co-founder, Owen, Vicidiem, not Hutchinson, repurchased all of Owen's stock (which was equal to 25% of Vicidiem). Vicidiem sold 10% to an investor, Robert Saxton, and Hutchinson allocated all of the remaining 15% for himself. Accordingly, Vicidiem has a significant claim against Hutchinson for his misappropriation of its stock as the value of this stock is worth several million dollars. (Dkt. 37, ¶¶34-45). This issue is raised in Christensen's Counterclaim. Counsel cannot represent both Vicidiem and Hutchinson. [5]

- Hutchinson is misappropriating corporate opportunities from Vicidiem and funneling them to Mworks.  A contingent of Vicidiem's customer's in Arizona need highly profitable low volt and fiber optic cabling.  Neither Vicidiem nor Mworks can perform this work directly and requires them to subcontract the work to other companies.  Instead of having Vicidiem subcontract this work out for their own clients, Hutchinson uses Mworks to do so and retains all of the profit. What is worse, most of the work related to designing and managing these projects is done by Vicidiem employees.  Simply put, Mworks uses Vicidiem's customers and employees to generate significant revenue with no compensation to Vicidiem. (Dkt. 37, ¶50).  This is another cause of action which Vicidiem has against Hutchinson and Mworks for upwards of $1,000,000.00 in lost profits. Counsel cannot represent both Vicidiem and Hutchinson on this issue.

- Hutchinson is siphoning significant resources and revenue away from Vicidiem. One such scheme involves Mworks charging Vicidiem $50 an hour for work done low-level customer service employees of Mworks.  The Mworks employees

---

[5] Plaintiffs have taken the position that Christensen's claims are direct claims only. As discussed more fully below, in the context of determining whether a conflict exists, the distinction between direct claims brought by a shareholder verses derivative claims brought on behalf of all the shareholders is one without a difference.

work for less than $20 per hour answer service calls, primarily for Vicidiem. Rather than have Vicidiem hire employees of their own for the lower rates, Hutchinson causes Mworks to bill Vicidiem $50 an hour for these employees' time. Switching the same people sitting at the same desks doing the same job to Vicidiem's payroll would save Vicidiem $30 an hour ($5,000 a month) per employee. Defendants have recently learned Hutchinson has actually increased this practice, and now has several more Mworks employees being billed to Vicidiem at inflated rates. (Dkt. 37, ¶¶50-52). Thus, Vicidiem has a cause of action against Hutchinson and Mworks for more than $100,000 for each year of this scheme alone. This claim is raised in Christensen's Counterclaims. Counsel cannot represent both Hutchinson and Vicidiem on this issue.

- In this same vein, Hutchinson has Vicidiem pay his girlfriend, Kelly Ward, a full-time salary even though she works full-time in Arizona as a Vice President for her stepfather's development company, Hancock Development. (Dkt. 37, ¶¶53-58). Thus, Vicidiem has claims against Hutchinson for corporate waste, which are raised in Christensen's counterclaims.

- Hutchinson also uses Vicidiem employees to work for Mworks, but does not have Vicidiem invoice Mworks like he does with Mworks employees doing work for Vicidiem. Former employees North and Tweedie were consistently sent to do work for Mworks. Multiple current Vicidiem employees also fall into this category, *e.g.* Kristy Dickson, Michael Horton, Tyler Corbett, and Kelly Ward, all of whom consistently work for Mworks while being paid by Vicidiem. (Dkt. 37, ¶50). This misappropriation of resources costs Vicidiem well over $200,000.00 (or more) per year, which Vicidiem could claim against Hutchinson and is raised through Christensen's Counterclaims.

- Hutchinson consistently states Vicidiem and Mworks are essentially the same company. He takes this position in spite of the fact Vicidiem has four shareholders to whom he owes fiduciary duties. Indeed, after firing Christensen,

Hutchinson formalized this position. (*See* Dkt. 46 Ex. 5). Ironically, this of course is counter to the way he actually treats the finances and business opportunities of the two business as everything falls in favor of Mworks. Again, Vicidiem has claims against Hutchinson for breaching his duties, which are raised in this lawsuit. Counsel cannot represent them both.

- Hutchinson, on many occasions, has Vicidiem pay the full monthly rent for the office space Vicidiem and Mworks share. This does not, of course happen the other way. Vicidiem has an interest in recouping this money via claims against Hutchinson and Mworks.

- Hutchinson has, and likely continues to funnel Vicidiem assets to pay for personal expenses, including but not limited to personal travel, personal property. (Dkt. 37, ¶¶60-62).

- Hutchinson has had Vicidiem make distribution payments to his cousin and shareholder, Brett Brimley (and is likely still doing so). However, no distributions have been made to Christensen or Mr. Saxton. (Dkt. 37, ¶¶63-71). This is not only directly contrary to corporate law, it also violates applicable tax laws and places Vicidiem at a very high risk of losing its "S Corp." designation, not to mention unjustified tax liability. Vicidiem has significant claims against Hutchinson for both the wrongful distributions as well as jeopardizing its tax status, each of which is raised in the Counterclaims.

- Hutchinson has consistently maintained he does not take any compensation from Vicidiem. Such representations have been made to Vicidiem's shareholders (including Christensen) as well as others. (Dkt. 37, ¶40). However, based on his various schemes to funnel monies away from Vicidiem, it is clear this is not true.

- Hutchinson has, and continues to claim, Vicidiem is not profitable, and does not have the ability to make distributions to its shareholders. Vicidiem likely does have the ability to make distributions, however, to the extent it does not, it's because of Hutchinson's schemes. (*see* Dkt. 37, ¶¶63-71). Given the above,

Vicidiem's shareholders, including Christensen, have a significant interest in Vicidiem's financial position.  Counsel cannot represent both Hutchinson and Vicidiem in these issues.

It is readily apparent that Hutchinson's position in defending against these claims is in direct conflict with Vicidiem's interests, and the interests of its other shareholders, including Christensen.  There is no way counsel can represent both Hutchinson and Vicidiem.  Nor can Hutchinson serve as the point of contact for Vicidiem in this action. Indeed, independent counsel, free of Hutchinson's influence is necessary in order for Vicidiem to determine what claims Vicidiem should bring against Hutchinson.

## C.   Anderson & Karrenberg Have Refused To Withdraw As Vicidiem's Counsel

On December 16, 2019, Defendants' counsel sent a letter to Plaintiffs' counsel raising the significant ethical issues related to Anderson & Karrenberg's continued representation of Vicidiem and Hutchinson. (Declaration of Kent Christensen ("KRC Decl.") ¶3, Ex. A).  The following day Anderson & Karrenberg responded stating they needed time to analyze the conflict and asked for additional time to answer Defendants' Counterclaims. (*Id.* ¶4, Ex. B).  Remarkably, even though Plaintiffs repeatedly raised purported ethical issues in their complaints, Anderson & Karrenberg had not recognized their own conflicts.

Defendants' counsel agreed to an extension so the parties could figure out a solution. (*Id.*).

On January 6, 2020, Defendants' counsel again reached out to Anderson & Karrenberg in attempt to determine if new counsel had been obtained. (*Id.* ¶6, Ex. D). Counsel also suggested that because of the nature of the situation (Vicidiem having no functioning board of directors and Hutchinson being the only shareholder actively participating in the business) that the parties ought to ask the Court's assistance in finding new counsel. (*Id.*).

On January 10, 2020, counsel spoke on the phone about the ethical issues, and the need for new counsel.  Anderson & Karrenberg suggested they were seeking a waiver of the conflict, but acknowledged Hutchinson could not provide it.  Instead, they indicated they were exploring Hutchinson's cousin and Vicidiem shareholder Bret Brimley waiving the conflict.  Defendants' counsel objected, and specifically stated Mr. Brimley had already been implicated in Christensen's counterclaim as being in cahoots with Hutchinson, and therefore could not provide a waiver. (*Id.* ¶7). Defendants' counsel also agreed to further extend the deadline for filing answers to Christensen's and North's counterclaims while the issue was resolved.

On January 13, 2020, Defendants' counsel emailed Anderson & Karrenberg stating, among other things:

> Rule 1.13 of the Rules of Professional Conduct requires consent by an appropriate official, or by all of the shareholders.  In this circumstance, there is no appropriate official that can waive the conflict.  Bret Brimley certainly cannot.  As I mentioned, we already know of wrongdoing related to Mr. Brimley, and he may very well be added as a party if some of our suspicions bear out in discovery. Counsel again suggested it seems the easiest route is to ask the court to appoint new counsel for Vicidiem as this would avoid the ethical issue all together.

(*Id.,* ¶8, Ex E.)

On January 15, 2020, Plaintiffs' counsel reached out asking for yet more time to determine their course of action asserting they were still working on their analysis of the conflict issue.  The following day several emails were exchanged.  The first, was sent by Defendants' counsel stating:

> We are fine with the extension if the time is to be spent in finding independent counsel, in which case we should probably just file a motion to the court next week which seems like the safest way to avoid ethical issues.  But, if the extra time is to just try to secure a waiver of the conflict,

there really is no reason to take more time.  It is not one that can be waived, nor is there anyone that could waive it anyway.

(*Id.* ¶9, Ex. F).

In response, Anderson & Karrenberg ignored the fact they needed to withdraw, and instead stated they needed more time.  (*Id*. ¶10, Ex. G).  Defendants agreed to the extension despite it being obvious the actual issue – getting new counsel – was being ignored. (*Id.*)

On January 22, 2020, Anderson & Karrenberg again emailed stating they planned to file their response by Friday.  However, they made no effort to address the issue of new counsel.   The following day, they filed a joint Motion to Dismiss and joint Answer on behalf of Vicidiem and Hutchinson, seemingly ignoring the obvious conflicts at issue and taking the repeated extensions of time to prepare a meritless Partial Motion to Dismiss rather than handling the conflict issue.[6]  Again, no effort was made to distinguish the two parties despite them having dramatically different interests, which is particularly true with respect to the Motion to Dismiss where  Vicidiem is opposing claims that that it should be pursuing.  At a minimum, Vicidiem has an interest in determining whether its assets, resources and opportunities have been and continue to be misappropriated.

## IV.   ANDERSON & KARRENBERG CANNOT CONTINUE TO REPRESENT BOTH VICIDIEM AND HUTCHINSON

### A.    The Court Has Discretion To Disqualify Counsel

 "It is well-established 'the control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge' and is a matter of judicial discretion." *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994) (quoting *Redd v. Shell Oil Co.*, 518 F.2d 311, 314 (10th Cir. 1975)). "Motions to disqualify are governed by

---

[6] Rather than resolve their own conflict, Plaintiffs' strategy seems to be pure deflection.  The same day Plaintiffs filed the Motion to Dismiss, Anderson & Karrenberg sent a letter to Defendants' counsel claiming defense counsel had an unwaivable conflict and demanding they withdraw.

two sources of authority," (1) the local rules of the court in which they appear and (2) the applicable rules of professional conduct. *Cole*, 43 F.3d at 1383.

A court has broad discretion and the inherent authority to disqualify counsel or a law firm. *SLC Ltd. v. Bradford Group West, Inc.*, 999 F.2d 464, 466 (10th Cir. 1993). The Tenth Circuit has stated the ABA Model Rules of Professional Conduct "reflect the national standard to be used in ruling on disqualification motions." *Cole*, 43 F.3d at 1383. Disqualification should be ordered when "a finding that presence of a particular counsel will taint the trial by affecting his or her presentation of a case." *Parkinson v. Phonex Corp.,* 857 F.Supp. 1474, 1476 (Utah 1994).

In deciding a disqualification motion, the Court should consider: (1) the egregiousness of the violation; (2) the presence or absence of prejudice to the other side; (3) whether and to what extent there has been a diminution of effectiveness of counsel; (4) hardship to the other side; and (5) the stage of trial proceedings. *Parkinson,* 857 F.Supp. at 1467. Notwithstanding, this list of factors is not exhaustive, but rather illustrative of the facts that may be pertinent. *See id.* Each case must be examined "on its own specific facts" and "[t]he essential issue to be determined in the context of litigation is whether the alleged misconduct taints the lawsuit." *Id.* at 1480; *see also Bodily v. Intermountain Health Care Corp.,* 649 F.Supp. 468, 478 (D. Utah 1986) ("Where an attorney's conflict of interest undermines the court's confidence in the vigor of his representation of the client, the court may disqualify the attorney." ); *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 377 (1981) ("The decision whether to disqualify an attorney ordinarily turns on the peculiar factual situation of the case then at hand.").

Lastly, "in determining whether to disqualify counsel for conflict of interest, the trial court is not to weigh the circumstances 'with hair-splitting nicety' but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing 'the appearance of impropriety,' it is to resolve all doubts in favor of disqualification." *United States v. Clarkson*, 567 F.2d 270, 273 (4th Cir. 1977) (quoting

*Gas-A-Tron of Arizona v. Union Oil Co. of California 534,* F.2d 1322, 1324-25 (9th Cir. 1976); *United States v. Trafficante*, 328 F.2d 117, 120 (5th Cir. 1964)).

### B.   The URCP Prohibit Counsel From Representing Adverse Clients

Utah Rules of Professional Conduct 1.7 and 1.13 prohibit a lawyer from representing a client who is directly adverse to another client without obtaining the written consent of both clients. The pertinent part of Rule 1.7 provides: "[A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (a)(1) The representation of one client will be directly adverse to another client," or (a)(2) "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client…" Utah R. Prof. Conduct 1.7.   There is no dispute Vicidiem and Hutchinson are directly adverse and an actual conflict exists between them.

### 1.   Anderson & Karrenberg Is Clearly Conflicted In Its Continued Representation of Both Vicidiem and Hutchinson

The counterclaims against Hutchinson demonstrate very real and readily apparent conflicts of interest between Hutchinson and Vicidiem. The claims allege Hutchinson has been siphoning and/or misdirecting what amounts to millions of dollars in resources, opportunities, and Vicidiem stock, for his benefit.   Notwithstanding, Anderson & Karrenberg pretend the two parties' interests are aligned and the two parties are the same.

For instance, both the original complaint and the FAC assert claims for Hutchinson that he clearly does not have standing to bring - *e.g.* breach of fiduciary duty, trade secrets, tortious interference, and malpractice.   These claims, while meritless, belong to Vicidiem, and Vicidiem alone.   Yet, counsel continues to assert them for both Hutchinson and Vicidiem.   The same is true for the two answers that have now been filed.   They have made no attempt to distinguish between the two parties. Instead, counsel plows forward as if Vicidiem is nothing more than Hutchinson's alter

ego.  While this is certainly true of Hutchinson's mind, it cannot be the same for counsel.  Vicidiem's interests must be placed on par with Hutchinson's.  Utah R. Prof. Conduct 1.7. Cmt. 29 ("A lawyer cannot undertake common representation of clients where contentious litigation or negotiations between them are imminent or contemplated. Moreover, because the lawyer is required to be impartial between commonly represented clients, representation of multiple clients is improper when it is unlikely that impartiality can be maintained…").  Counsel's inability to differentiate between Hutchinson and Vicidiem - despite their ethical duty to do so – illustrates the very problem Rule 1.7 seeks to address.

Even more troubling is the fact counsel has spent more than a month "analyzing" this issue, and remarkably, came to the conclusion not to withdraw.  Instead they filed *joint* pleadings for both Plaintiffs', including having Vicidiem join in asking the court to dismiss claims of fraud against Hutchinson. While counsel undoubtedly received considerable pressure from Hutchinson to pursue this course, where a clear ethical issue arises, it is not up to the client to make the call.  They should have withdrawn.

### 2. Vicidiem's Shareholders Will Be Greatly Prejudiced If Present Counsel Are Allowed to Continue Representing Vicidiem

It is uncontested that Christensen is a shareholder of Vicidiem.  His counterclaims against Hutchinson for an Accounting, Breach of Fiduciary Duty, Fraud, Unjust Enrichment, Dissolution, and Injunctive Relief, put Hutchinson and Vicidiem in direct conflict with one another.  Indeed, but for Utah's exception that allows shareholders in closely held companies to bring such claims as direct claims, Christensen's claims would have been brought derivatively. *See Aurora Credit Servs., Inc. v. Liberty W. Dev., Inc.*, 970 P.2d 1273 (Utah 1998)("The rationale for requiring an action to proceed derivatively is often absent in a closely held corporation… the concept of a corporate injury that is distinct from any injury to the shareholders approaches the fictional in the case of a firm with only a handful of shareholders."); *Dansie v. City of Herriman*, 2006 UT 23, ¶ 15, 134 P.3d 1139, 1144 (Utah 2006)(citing

*Aurora* and stating "circumstances may exist under which a shareholder may prosecute a claim that would normally belong to a corporation.").[7]   Notwithstanding, in the context of determining whether a conflict exists, the distinction between Christensen's direct claims as a Vicidiem shareholder verses derivative claims brought on behalf of all the shareholders is one without a difference. *See, Fanning v. John A. Sheppard Mem'l Ecological Reservation, Inc.*, No. 2:18-CV-01183, 2018 WL 5316009, at *2 n. 1 (S.D.W. Va. 2018) (Noting a conflict between an organization's board and the organization itself is equally applicable in cases involving shareholders that are not derivative in nature). Accordingly, the caselaw addressing conflict of interest questions related to shareholder claims whether in the context of a derivative action or direct shareholder claims is the same.

It is black letter law that counsel is forbidden from representing a corporation and any of its directors or officers in a shareholder suit where, *as here*, the company's director (and its CEO) is alleged to have committed fraud. *Bell Atlantic Corp. v. Bolger,* 2 F.3d 1304, 1317 (3d Cir.1993)("We have no hesitation in holding that—except in patently frivolous cases—allegations of directors' fraud, intentional misconduct, or self-dealing require separate counsel."); In re *Oracle Sec. Litig.*, 829 F.Supp. 1176, 1188 (N.D. Cal. 1993)(disqualification warranted where "the same counsel represents both the corporation and the director and officer defendants, [and thus] the interests of the corporation are likely to receive insufficient protection"); *Lewis v. Shaffer Stores Co.,* 218 F.Supp. 238 (S.D.N.Y 1963)(holding "the interests of the officer, director and majority stockholder defendants in this action are clearly adverse, on the face of the complaint, to the interest of the stockholders," thus mandating disqualification of counsel). *Cannon v. U.S. Acoustics Corp.,* 398 F.Supp. 209 (N.D.Ill.1975), *aff'd in relevant part per curiam,* 532 F.2d 1118, 1119 (7th Cir.1976)(disqualifying a law firm from representing a corporation and its board of

---

[7] Plaintiffs' recently filed partial motion to dismiss does not challenge Christensen's direct claims as needing to be derivative and therefore has acknowledged they are properly before the Court.

directors where the complaint alleged a misappropriation of corporate funds by the directors.); *Messing v. FDI, Inc.,* 439 F.Supp. 776 (D.N.J.1977)(holding the corporation was required to obtain independent counsel, "unshackled by any ties to the directors", to advise it of its most favorable course of action.). [8]

Each of the foregoing cases demonstrate the difficulties created by dual representation in a shareholder suit, including the inability to ensure an attorney's duty of loyalty to his client, preventing conflicts of interest which could prejudice a client, and maintaining client confidentiality. Indeed, the courts emphasized that to permit such dual representation would *unfairly* prejudice the shareholder bringing the action. This is clearly the case here.

Hutchinson is the sole director of Vicidiem (as well as its CEO) and the only shareholder that works in management of Vicidiem. The claims against him raise serious wrongdoing, including fraud. As such, Anderson & Karrenberg's continued representation of Vicidiem cannot continue. *Bell Atlantic Corp.,* 2 F.3d at 1317. Indeed, new counsel must be appointed that is "unshackled by any ties to [Hutchinson]" that can then advise Vicidiem of its most favorable course of action. *Messing,* 439 F.Supp. 776.

> *3.* **Anderson & Karrenberg's Conduct Demonstrates a Significant Diminution of Their Effectiveness Particularly Regarding Vicidiem**

As discussed, Anderson & Karrenberg have, and continue, to treat Vicidiem and Hutchinson as one in the same. This is being done despite the blatant conflict of interest between the two parties directly raised by Defendants. Vicidiem's only interest should be to protect itself, not Hutchinson. At this point, a significant part of this case is for Vicidiem to determine whether Hutchinson has indeed been siphoning money,

---

[8] Plaintiffs' meritless partial motion to dismiss challenging Christensen's fraud claims is clearly an attempt to make an end run on Anderson & Karrenberg's unwaivable conflict, but it is insufficient and Christensen's fraud claims are not the only claims raising a conflict.

redirecting corporate opportunities, misappropriating Vicidiem stock, and pursuing his interests at the expense of Vicidiem and its shareholders. The same attorneys cannot represent the fox, the hen house, and the hens.

### 4. The Appointment of New Counsel Will Not Create a Hardship for Either Vicidiem or Hutchinson

Any assertion that adding new counsel that will exclusively lookout for Vicidiem's interest would be unwarranted. Vicidiem needs independent counsel looking out for its best interest. As does Hutchinson. He too needs counsel that is exclusively looking out for his interests. What is more, Vicidiem is a viable enterprise with a strong revenue stream that has the resources to pay its own counsel. Any assertion from Hutchinson that he will have a hardship because Vicidiem is no longer footing the bill in defending him should not factor into the Courts analysis as it is Hutchinson's own wrongdoing that has placed him in the present situation.[9]

### 5. The Early Stage of This Litigation Easily Allows for New Counsel

Given the parties have not even set forth a discovery plan – let alone started discovery – the addition of new counsel will not have much effect, if any, on the case proceeding. This is essentially a non-factor. On balance, the factors weigh heavily in favor of disqualification.

### C. The Conflict Between Hutchinson and Vicidiem Cannot Be Waived

Rule 1.13(g) requires a lawyer that is representing an organization and any of its directors or officers (and others) to comply with Rule 1.7. If Rule 1.7 is triggered, as it is here, consent to dual representation "shall be given by [1] an appropriate official of the organization other than the individual who is to be represented, or [2] by the shareholders." UT R RPC Rule 1.13(g). Under the circumstances of this case, the

---

[9] Vicidiem should not be advancing funds for Hutchinson's legal defense as it is impermissible under Utah law.

conflicts are simply not waivable, nor is there an appropriate person within Vicidiem that could waive the conflicts.

Comment 15 to Rule 1.7 explains:

Consentability is typically determined by considering whether the interests of the clients will be adequately protected if the clients are permitted to give their informed consent to representation burdened by a conflict of interest. Thus, under paragraph (b)(1), representation is prohibited if in the circumstances the lawyer cannot reasonably conclude that the lawyer will be able to provide competent and diligent representation.

UT R RPC Rule 1.7, Cmt. 15; *see also Celgene Corp. v. KV Pharmaceutical Co.,* 2008 WL 2937415 *4 (D.N.J.2008) (stating that "the key question is whether [the party arguing that the waiver applies] has satisfied the requirements of the exception" allowing for such a waiver).   However, when an actual conflict of interest has arisen, and a position asserted by the parties is directly adverse to the others, the conflict is <u>not</u> <u>waivable</u>, "**meaning that the lawyer cannot properly ask for a waiver or provide representation on the basis of the client's consent**." *United States v. Emigration Improvement Dist.*, No. 2:14-CV-701-JNP, 2016 WL 4148251, at *4 (D. Utah Aug. 4, 2016), *aff'd sub nom. United States ex rel. Tracy v. Emigration Improvement Dist.*, 717 F. App'x 778 (10th Cir. 2017) (quoting *In re Marriage of Wixom & Wixom*, 332 P.3d 1063, 1075 (Wash. Ct. App. 2014).

As demonstrated, the conflict between Vicidiem and Hutchinson are direct and actual, and therefore, cannot be waived. *Emigration Improvement Dist.*, 2016 WL 4148251, at *4.   Indeed, a litany of case law demonstrates shareholder disputes that place the company and its shareholders at odds with directors and/or officers mandate the disqualification of counsel in the dual role. *See e.g.*,; *In re Oracle Sec. Litig.*, 829 F.Supp. 1176; *Lewis,* 218 F.Supp. 238; *Cannon,* 398 F.Supp. 209; *Messing,* 439 F.Supp.

CALL &
JENSEN

776. This is particularly important where, as here, fraudulent conduct is at issue. *See Bell Atlantic Corp.,* 2 F.3d 1304.

Even if this conflict were waivable, Rule 1.13 requires consent by all shareholders because there is no appropriate official that could waive the conflict. *See* UT R RPC Rule 1.13(g). For obvious reasons, Christensen will not agree to such a waiver, and Anderson & Karrenberg must be disqualified.

## V.    CONCLUSION

The Motion for Disqualification of Counsel should be granted. There are numerous conflicts of interest between Vicidiem and Hutchinson that cannot be waived. Defendants request the Court appoint counsel for Vicidiem and appoint an uninterested individual to act as the point person for Vicidiem with counsel to avoid Hutchinson & Anderson and Karrenberg from tainting Vicidiem's legal positions.

DATED January 31, 2020                CALL & JENSEN, A.P.C.


                                      */s/ Kent R. Christensen*
                                      Kent R. Christensen

                                      *Attorneys for Defendants and
                                       Counterclaimants*

1

**CERTIFICATE OF SERVICE**

2

3    I hereby certify that on February 3, 2020, a true and correct copy of the

4    foregoing was filed with the court's electronic filing system which sent notification to

5    all parties registered with ECF.

6

7    */s/  Kent R. Christensen*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28