IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| VICIDIEM, INC., and CRAIG HUTCHINSON,<br><br>        Plaintiffs,<br>v.<br><br>PAUL CHRISTENSEN, FIBERWAVE TECHNOLOGIES LLC., et al.,<br><br>        Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTIONS TO DISQUALIFY COUNSEL<br><br>Case No. 2:19-cv-358 DBB DBP<br><br>District Judge David B. Barlow<br><br>Magistrate Judge Dustin B. Pead |

This matter is referred to the undersigned from District Judge David Barlow based upon 28 U.S.C. 636(b)(1)(A). (ECF No. 86.) Pending before the court are competing motions to disqualify counsel. Defendants and Counterclaimants Paul Christensen and Dean North seek to remove Plaintiffs' counsel Anderson & Karrenberg from this case. (ECF No. 83.) Plaintiffs and Counterclaim Defendants Craig Hutchinson and Vicidiem move the court to remove Kent Christensen who is Defendant Paul Christensen's brother, and his father Roger Christensen, as counsel on this case. (ECF No. 92.) All of the Defendants are represented by these family members. For the reasons discussed below, the court denies Defendants' Motion to Disqualify Counsel and denies Plaintiffs' Motion to Disqualify Defendants' Counsel.

## BACKGROUND

Vicidiem provides services such as internet, television, and landline telephone services to apartment complexes and other multi-unit developments. Compl. p. 2, ECF No. 21. Hutchinson is the principal and founder of Vicidiem. From 2012 to 2013, Defendant Christensen represented Vicidiem, Hutchinson, and other equity owners of Vicidiem on a part time basis. Then in 2014

Christensen began working as Vicidiem's "general counsel"[1] drafting contracts, advising on litigation and employment matters, and representing Vicidiem on other legal issues. Plaintiffs assert that during this timeframe, Christensen became aware of Vicidiem's critical information including pricing, contractual terms, account information, and negotiations. Over the next several years, Christensen performed legal services for Vicidiem. For example, Christensen drafted non-solicitation and other non-compete agreements for Vicidiem, and he drafted a demand letter to a former Vicidiem employee regarding trade secrets and confidential information.

In March 2019, Plaintiffs terminated Christensen. At the time of his termination Christensen was allegedly in possession of Vicidiem's confidential information, including draft customer contracts. Despite requests to return the information, Christensen supposedly never complied. As is par for the course in cases similar to this one, shortly after Christensen was terminated, "three key Vicidiem employees … abruptly resigned." Compl. p. 7. Defendants Dean North and Steven Tweedie were two of those that resigned. These employees, along with Christensen and others, then founded Fiberwave in April 2019. Plaintiffs' allege that within days of its founding, Defendants began reaching out to Vicidiem's customers and vendors. This suit followed in May 2019.

## DISCUSSION

The court has the inherent power to disqualify counsel "where necessary to preserve the integrity of the adversary process." *Field v. Freedman,* 527 F.Supp. 935, 940 (D.Kan.1981). "It is well-established that ordinarily 'the control of attorneys' conduct in trial litigation is within the

---

[1] Plaintiffs note that Christensen "held himself out as General Counsel of Vicidiem." Mtn p. 5, ECF No. 92. Plaintiffs refer to Christensen's legal services as "independent contractor services" in the Amended Complaint. (ECF No. 21, p. 6.) Whether Christensen was Vicidiem's General Counsel is immaterial to the court's decision. It is clear from the record, that Christensen was involved in legal services for Vicidiem on a consistent and detailed basis for a number of years.

supervisory powers of the trial judge,' and is thus a matter of judicial discretion." *Cole v. Ruidoso Mun. Sch.*, 43 F.3d 1373, 1383 (10th Cir. 1994) (quoting *Redd v. Shell Oil Co.*, 518 F.2d 311, 314 (10th Cir. 1975)). The moving party bears the burden on a motion to disqualify counsel. *See Parkinson v. Phonex Corp.*, 857 F.Supp. 1474 (D. Utah 1994). An evidentiary hearing on a motion to disqualify is not required when the parties have fully briefed the issue. *See Weeks v. Indep. School Dist. No. I–89 of Oklahoma City., OK., Bd. Of Educ.,* 230 F.3d 1201, 1212 (10th Cir.2000). The parties have fully briefed the issue, in fact, the parties have filed multiple replies and sur-replies, and additional evidence is unnecessary.

"A district court has broad discretion in imposing the remedy of disqualification." *Weeks,* 230 F.3d at 1211. Yet, "federal courts have treated a motion for disqualification as one that should only rarely be granted." *Parkinson*, 857 F.Supp. at 1480. As noted by Tenth Circuit, motions to disqualify are governed by two factors. "First, attorneys are bound by the local rules of the court in which they appear." *Cole*, 43 F.3d at 1383. Federal courts generally adopt the rules of professional conduct of the state in which they reside. As set forth in the Local Rules, attorneys appearing before this court are bound by the Utah Rules of Professional Conduct. *See* DUCivR 83–1.5.1(a). "Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law." *Cole*, 43 F.3d at 1383 (internal citations omitted).

The local rules of this court specifically provide that "attorneys practicing before this court ... must comply ... with the rules of practice adopted by this court and with the Utah Rules of Professional Conduct as revised, amended, and interpreted by this court." DUCivR 83-1.5.1(a). "Utah has adopted, with some variations, the American Bar Association Model Rules of Professional Conduct." *SLC Ltd. V v. Bradford Group West, Inc.*, 999 F.2d 464. 466 (10th

Cir.1993). The Tenth Circuit specified that the ABA Model Rules of Professional Conduct "reflect the national standard to be used in ruling on disqualification motions." *Cole,* 43 F.3d at 1383.

### (i) Defendants' Motion to Disqualify Anderson and Karrenberg

Anderson & Karrenberg represent Plaintiffs Vicidiem and Craig Hutchinson in this case. Hutchinson is Vicidiem's CEO and the sole director of its board of directors. (ECF No. 45 ¶7.) The counterclaims brought by Defendants assert that Hutchinson has been siphoning and or misdirecting "millions of dollars in resources, opportunities, and Vicidiem stock, for his benefit." Mtn p. 18. Defendants contend that Anderson & Karrenberg should be disqualified under Utah Rule of Professional conduct 1.7, which governs conflicts of interest involving current clients. Rule 1.7 provides "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) The representation of one client will be directly adverse to another client; or (2) There is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." UT R RPC Rule 1.7. The rule, however, also provides that "[n]otwithstanding the existence of a concurrent conflict of interest ..., a lawyer may represent a client if ... each affected client gives informed consent, confirmed in writing." *Id.*

Vicidiem is a closely held corporation that is not listed on any national exchange, and it has "four purported shareholders—Craig Hutchinson, Brett Brimley, Robert Sexton, and Defendant Paul Christensen." Op. p. 2, ECF No. 85. In January 2020, shareholders Brett Brimley and Robert Sexton signed a conflict waiver allowing Anderson & Karrenberg to continue representation. Defendant Christensen obviously will not sign any conflict waiver. Although

Christensen is a shareholder of Vicidiem, recently, Vicidiem elected to purchase Christensen's shares in the company under Utah Code § 16-10a-1434. Utah Code § 16-10a-1434 provides that a "corporation that has no shares listed on a national securities exchange or regularly traded in a market … may elect to purchase all shares of the corporation owned by the petitioning shareholder, at the fair value of the shares, ….." Utah Code Ann. § 16-10a-1434. Such a purchase would alter the Christensen's status as a shareholder, and it would affect whether the alleged conflict here is waivable.

Defendants argue Vicidiem's interests are in direct conflict with Hutchinson. For example, Hutchinson has allegedly unilaterally allocated Vicidiem stock to himself, taken corporate opportunities and funneled them to Mworks, another company where he is the CEO, and taken revenue away from Vicidiem. In short, Defendants motion rests on the premise that "[t]here is no dispute Vicidiem and Hutchinson are directly adverse and an actual conflict exists between them." Mtn. p. 18.

Plaintiffs seek to undermine this premise, arguing there is a distinction between cases involving derivative claims and cases involving direct claims. A derivative claim is one brought by a shareholder on behalf of a company, and generally occurs when the company refuses to act on some perceived wrong. Typically, the claim is filed against board members, company leadership, or an executive such as Hutchinson who is the CEO of Vicidiem. In contrast, a direct claim stems from redress where the awarded damages will not go to the benefit of the company, rather, they will accrue to the benefit of the stockholder bringing suit. Plaintiffs cite to cases from other jurisdictions where the courts drew a distinction between derivative and direct claims, and then, declined to find a conflict with counsel. For example, in *Fox v. Idea Sphere, Inc.*, a case from the Southern District of New York, a minority shareholder of a closely held corporation

brought suit against the corporation and its controlling shareholders asserting claims for improper termination, fraud, breach of fiduciary duties and contract, and improper business practices including waste of resources. *Fox v. Idea Sphere, Inc.*, 2013 WL 1191743, *6-10, (S.D.N.Y., Mar. 13, 2013). The plaintiff alleged there was a disqualifying conflict of interest between the corporation and the individual defendants, such that one firm could not represent them both. The court rejected this argument, finding there was a difference between derivative and direct claims. In doing so the court noted:

> There is thought to be an "inherent conflict" between a corporation and its shareholders, officers, or directors in a derivative action, because, in essence, the plaintiff alleges that those shareholders, officers, or directors harmed the corporation, and thus the corporation's interests are directly opposed to its codefendants'. *McAlinden v. Wiggens*, 543 F.Supp. 1004, 1006 (S.D.N.Y.1982). In such a scenario, joint representation is "frowned upon." *Id.* By contrast, "A claim by individual shareholders against the corporation and its officers for a common wrong ... is not a derivative action and, therefore, does not preclude those parties sharing defense counsel." 3 Legal Malpractice § 26:6 (2013 ed.) (citing *McAlinden* ). In such cases, disqualification is rarely appropriate.

*Id.* at *22.

In similar fashion, the court in *Coldren v. Hart, King & Coldren, Inc.*, 239 Cal. App. 4th 237 (2015), also drew a distinction between derivative and direct claims in rejecting a disqualification motion. The court found that, contrary to the plaintiff's assertions, the complaint brought direct claims because the damages would not go to the benefit of the company, but instead, would go to the plaintiff. Thus, the sort of conflict in a derivative action was not present, and there was no need to disqualify counsel. *See also Obeid ex rel. Gemini Real Estate Advisors v. La Mack*, 2015 WL 7180735, *2 (S.D.N.Y., Nov. 9, 2015) (noting some caselaw suggests that "the mere assertion of derivative claims-at least theoretically on behalf of the company and against some of its officers or directors-should preclude joint representation of the defendant

officers or directors and of the company" but rejecting such routine disqualifications when the company is closely held).

Defendants cite to *Fanning v. John A. Sheppard Mem'l Ecological Reservation, Inc.*, 2018 WL 5316009 (S.D.W. Va., Oct. 26, 2018), asserting there is no difference between derivative and direct claims in regard to disqualifying conflicts of interest. The *Fanning* court did grant the plaintiff's motion to disqualify based on a concurrent conflict of interest. Yet, the court barely mentioned derivative actions in a footnote, and it was in the context that "a conflict may arise between the lawyer's duty to the organization and the lawyer's relationship with the board." *Id.* at *2. The fact that a conflict *may arise* does not justify disqualification in every care. The remaining authority offered by Defendants is unpersuasive and in some instances, appears to undermine Defendants' motion. *See Aurora Credit Services, Inc. v. Liberty West Development, Inc.*, 970 P.2d 1273 (Utah 1998) (holding that a court may allow a minority shareholder in a closely held corporation to bring direct claims against corporate officers).

The court finds the principles in the cases that draw a distinction between derivative and direct claims, especially in a closely held corporation, and how those influence a motion to disqualify, persuasive here. There is no automatic imputed bias of counsel in a suit that involves direct claims.

In addition to the cases cited to by Plaintiffs, the court recognizes the guiding tenets from *Parkinson v. Phonex Corp.*, 857 F.Supp. 1474, 1480 (D.Utah 1994), a case from this court. In *Parkinson* the defendants moved to disqualify counsel for the plaintiff. In denying the motion, the court stated:

> The sanction of disqualification of counsel in litigation situations should be measured by the facts of each particular case as they bear upon the impact of counsel's conduct upon the trial. The egregiousness of the violation, the presence or absence of prejudice to the other side, and whether and to what extent there has

>been a diminution of effectiveness of counsel are important considerations. In addition, equitable considerations such as the hardship to the other side and the stage of trial proceedings are relevant. The essential issue to be determined in the context of litigation is whether the alleged misconduct taints the lawsuit. For instance, in *Beck v. Board of Regents of State of Kan.*, 568 F.Supp. 1107 (D.C.Kan.1983) the court withheld its "inherent power" to disqualify stating that: The court should not act unless "the offending attorney's conduct threatens to 'taint the underlying trial' with a serious ethical violation." [citation omitted]. Whether or not the underlying trial may become tainted must be addressed in each case based on its own specific facts.

*Parkinson*, 857 F. Supp. at 1476 (citation omitted).

In considering the *Parkinson* factors here, the court finds they weigh against disqualifying Anderson & Karrenberg. In sum, there is no threat that will taint any eventual trial.

Rule 1.7 provides that "[n]otwithstanding the existence of a concurrent conflict of interest ..., a lawyer may represent a client if ... each affected client gives informed consent, confirmed in writing." UT R RPC Rule 1.7. Vicidiem has elected to purchase Christensen's shares in the company. If this purchase occurs, then any alleged conflicts between Vicidiem and Hutchinson will be remedied by the conflict waivers signed by the remaining shareholders Brimley and Sexton.

Finally, the court has also considered Utah Rule 1.13, which provides that a lawyer "employed or retained by an organization represents the organization." The court finds nothing in the rule, that results in disqualification when considering the "peculiar factual situation" here. *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 377 (1981).

Accordingly, the court will deny Defendants' Motion to Disqualify Counsel.[2] (ECF No. 83.)

---

[2] The court notes that, subsequent to the briefing, Plaintiffs provided notice that Hutchinson has taken a leave of absence form Vicidiem. This supposedly addresses Defendants' concerns with Hutchinson directing Vicidiem's affairs. (ECF No. 102.) As expected, Defendants vehemently objected to the notice. (ECF No. 105.) The court does not consider the leave of absence as part of its analysis.

### (ii)     Plaintiffs' Motion to Disqualify counsel related to Christensen

Plaintiffs seek the disqualification of Defendants' counsel under Utah Rule of Professional Conduct 1.6, 1.7, 1.8 and 1.9 due to "serious unwaivable and/or unwaived conflicts." Mtn. p. 2. Plaintiffs also filed supplemental briefing seeking disqualification under Rule 1.10. (ECF No. 109.) There has been over 85 pages of briefing relating to the motion, not including the numerous exhibits and affidavits. After considering the whole of it, the court is not persuaded that Plaintiffs' motion should be granted.

As noted previously, Defendant Paul Christensen is a former contract attorney for Vicidiem who eventually became its General Counsel from 2014 to early 2019. All of the Defendants here are represented by Defendant Paul Christensen's brother, Kent Christensen, and his father Roger Christensen. Plaintiffs argue, without providing much in the way of any evidence, that they are working this case on a pro bono basis with the help of Defendant Paul Christensen.

As set forth above, "federal courts have treated a motion for disqualification as one that should only rarely be granted." *Parkinson*, 857 F.Supp. at 1480. The movant bears the burden of establishing facts that warrant disqualification, *Id.* and it is a "drastic measure that should only rarely be granted." *Hewlett v. Utah State Univ.*, 2019 WL 1486693, at *2 (D. Utah Mar. 29, 2019) (citing *Procter & Gamble Co. v. Haugen*, 183 F.R.D. 571, 574 (D. Utah 1998)).

### a.  Rule 1.9

Rule 1.9 sets forth duties owed by an attorney to a former client. It provides that a "lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent,

confirmed in writing." UT R RPC Rule 1.9(a). It also prohibits an attorney who has formerly represented a client, to thereafter use "information relating to the representation to the disadvantage of the former client …." *Id.* 1.9(c)(1). Basically "information acquired by the lawyer in the course of representing a client may not subsequently be used or revealed by the lawyer to the disadvantage of the client." *Id.* Comment 8. "[A] party wishing to disqualify opposing counsel under Rule 1.9 must demonstrate three factors: (1) that a previous attorney-client relationship arose with the moving party; (2) that the present litigation is "substantially factually related" to the previous representation; and (3) that the attorney's present client's interests are materially adverse to the movant." *Poly Software Int'l, Inc. v. Su*, 880 F. Supp. 1487, 1490 (D. Utah 1995).

      Plaintiffs contend that Kent Christensen and Paul Christensen have violated Rule 1.9 by "using information relating to their representation of Vicidiem against Aaron Owen to the disadvantage of Vicidiem in this matter." Mtn p. 11. Owen co-founded Vicidiem with Plaintiff Hutchinson in 2010. Owen originally owned 25% of Vicidiem, but he sold 20% of his stock to Vicidiem in 2014, and then sold the remaining 5% to Vicidiem in 2017. In June 2016, Owen resigned, and shortly thereafter he sought to engage in competition with Vicidiem. Vicidiem retained outside counsel, Curtis Manning & Bradshaw, to enforce a non-competition agreement against Owen. Paul Christensen, who was working for Vicidiem at the time, helped prepare a settlement agreement between Vicidiem and Owen. While working on finalizing the agreement, he asked his brother Kent Christensen, to review it and offer suggested changes. Defendants characterize this as a "professional courtesy", while Plaintiffs assert this review imputes knowledge to Kent Christensen of Vicidiem's trade secrets, inner workings, and a host of unidentified privileged information. Since the filing of the motion, Kent has reviewed his emails

and found only two emails related to the agreement. In one of them it requested a favor to review the proposed settlement. (ECF No. 98.)

The court is not convinced that Kent's brief assistance on the settlement agreement in the Owen matter created an attorney-client relationship with Vicidiem. Vicidiem did not pay Kent Christensen for his services or treat him as their counsel. More importantly, there is no indication that Kent gleaned confidential factual information about Vicidiem's trade secrets, inner workings, or the alleged host of unidentified privileged information, by reviewing the settlement agreement and making suggestions. Plaintiff's arguments suggest that Kent's participation gave him the keys to the kingdom and to all of Vicidiem's treasure chests. Yet, this is simply not the case based on the facts before the court. *See The Joint Sugar House, LLC v. 14 Sols.*, 2016 WL 2344220, *3 (D.Utah May 3, 2016). Plaintiffs provide no evidence that Kent received confidential information.

Also unavailing are Plaintiff's arguments surrounding Defendant Paul Christensen. Although Paul gained knowledge about Vicidiem, Plaintiffs fail to offer any convincing evidence that he is secretly representing all the Defendants. Instead, such arguments are based on conjecture. Moreover, taken to their logical conclusion, anytime an attorney was terminated and then involved in a lawsuit with their former company, not only would they automatically be disqualified under Rule 1.9, but somehow a court would need to force them to forget everything they know about their prior company, so they would not share that knowledge with their attorney. The court is unaware of any Forgetfulness Potion outside the magical world of Harry Potter. While the court acknowledges that enforcing Rule 1.9 is important, the court is not persuaded by the evidence offered by Plaintiffs here, that it is implicated as to Paul Christensen.

Plaintiffs similarly argue that Roger Christensen's representation of Microworks, a sister company of Vicidiem, disqualify him under Rule 1.9. A previous attorney-client relationship must exist between the moving party and counsel. *Poly Software*, 880 F.Supp. at 1490. Plaintiffs' conclusory statement, without more, that Roger Christensen "learned all about Hutchinson, Microworks, and Vicidiem's approach to such cases, the tolerance for settlement, the financial ins and outs of such transactions, and the means whereby Vicidiem and Microworks may be legally exposed to competitor poaching" does not establish that relationship with Vicidiem. Mtn. p. 13. Thus, there is no basis to disqualify Roger Christensen under Rule 1.9.

    b. **Rule 1.7**

Rule 1.7 governs conflicts of interest involving current clients. The Rule restricts a lawyer from representing a client who is directly adverse to another client without obtaining the written consent of both clients. The Rule provides "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if: (1) The representation of one client will be directly adverse to another client; or (2) There is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." UT R RPC Rule 1.7. The rule, however, also provides that "[n]otwithstanding the existence of a concurrent conflict of interest ..., a lawyer may represent a client if ... each affected client gives informed consent, confirmed in writing." *Id.*

Plaintiffs point to the incompatibility in positions between Paul Christensen, and the other Defendants, as a basis for disqualification. For example, Vicidiem is suing Christensen for malpractice, alleging he failed to protect trade secrets and to ensure that Defendants North and Tweedie had enforceable contracts in place, preventing them from using trade secrets or

confidential information. Yet, Tweedie and North, are asserting that they are under no obligation to protect Vicidiem trade secrets. According to Plaintiffs, this creates an unwaivable conflict "because Defendants' counsel cannot claim that Paul Christensen properly performed legal work to protect Vicidiem's trade secrets while simultaneously arguing that North, Tweedie, and Fiberwave are free to use Vicidiem's customer lists, trade secrets, and other confidential information." Mtn p. 16. In similar fashion, Christensen was assigned to conduct legal work to determine how Vicidiem stock could be transferred to North. North, however, is now suing claiming he was entitled to Vicidiem stock. Thus, according to Plaintiffs, counsel cannot argue North was entitled to Vicidiem stock while defending Christensen from claims for failing to resolve the sock transfer.

     The court is not convinced that the representation of one client here will be directly adverse to another. There are other plausible positions that undermine the examples given by Plaintiffs. For example, Christensen could have adequately performed legal work to file for a trade secret, only to have Vicidiem fail to treat the information as a trade secret. And, Christensen could have fulfilled any legal fiduciary obligations regarding the stock transfer to North, only then, to have Hutchinson, or others at Vicidiem, refuse to adopt his advice. Or, certain items such as a customer list, could be argued by Defendants to not be a trade secret, while other items may have held that designation. In each of these instances, positions are available that are not directly adverse. The mere fact that one or two plausible positions may be adverse does not automatically equal disqualification. Further, Plaintiffs conveniently ignore Subsection (b) of Rule 1.7 that allows a lawyer to represent a client if "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client … and each affected client gives informed consent, confirmed in writing." UT R

RPC Rule 1.7(b). Such a procedure could be followed here if the positions of Defendants truly become adverse.

### c. Rules 1.6 and 1.8

Rule 1.6 restricts a lawyer from revealing "information relating to the representation of a client unless the client gives informed consent, …." UT R RPC Rule 1.6. Plaintiffs fail to adequately support any alleged violation of Rule 1.6 here. Rule 1.8 restricts a lawyer from using the "information relating to representation of a client to the disadvantage of the client unless the client gives informed consent." UT R RPC Rule 1.8. Once again, Plaintiffs fail to support any Rule 1.8 violation with credible substantiated evidence. As to both Rules, Plaintiffs offer little argument or argument that a violation of these Rules occurred.

### d. Rule 1.10

In supplemental briefing, after filing their motion, Plaintiffs seek to invoke Rule 1.10 as another basis to disqualify. Plaintiffs "recently discovered that Paul Christensen was affiliated with Call & Jensen, P.C. during the time he also represented Vicidiem in substantially related matters to this lawsuit." Suppl. Mem. P. 2, ECF No. 109. Such information is relevant, according to Plaintiffs, to their motion to disqualify Call & Jensen.

Rule 1.10 prohibits a lawyer who is associated in a firm, from knowingly representing a "client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, …." UT R RPC Rule 1.10.

Kent Christensen is a shareholder at Call & Jensen located in Newport Beach California. Defendant Paul Christensen is not licensed to practice in California, but he performed some work as a contract attorney for Call & Jensen. Because Plaintiffs have failed to demonstrate that either

14

Kent or Paul should be disqualified under Rules 1.7 or 1.9 there is no need to consider Rule 1.10 in any substantive form.

### e. Other factors

The court set forth the *Parkinson* factors above. *Parkinson*, 857 F. Supp. at 1476. In applying them to Plaintiffs' motion to disqualify, the court further finds that they weigh against granting the motion.

Finally, the court notes that Plaintiffs continue to assert that they found newly discovered facts that should equal disqualification. (ECF No. 119.) The court has considered this continual barrage of new details and finds they do little to support Plaintiffs' position. Both sides in this dispute have spent much time and resources in a vindictive approach toward each other. In the court's view, it is time for the parties to move past their trivial disagreements and posturing, and move toward resolution. The prevalence of scorched earth litigation tactics and the no holds barred approach by counsel in this case, undermine the principles set forth in Rule 1 of the Federal Rules, that promote the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

## ORDER

Based upon the foregoing, Defendants' Motion to Disqualify Counsel is DENIED. (ECF No. 83.) Plaintiffs' Motion to Disqualify is also DENIED. (ECF No. 92.) The court further DENIES Defendants' request to respond to the Plaintiffs' sur-reply. (ECF No. 120.)

IT IS SO ORDERED.

DATED this 31 August 2020.

_____
Dustin B. Pead
United States Magistrate Judge