IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| VICIDIEM, INC. a Utah Corporation; and CRAIG HUTCHINSON, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>PAUL CHRISTENSEN, an individual; FIBERWAVE TECHNOLOGIES, LLC, a Utah limited liability company; DEAN NORTH, an individual; STEVEN TWEEDIE, an individual; JOHN DOES I-X; and Doe Corporations I-X,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [79] COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:19-cv-00358-DBB-DBP<br><br>District Judge David Barlow |
| PAUL CHRISTENSEN, an individual,<br><br>Counterclaim Plaintiff,<br><br>v.<br><br>VICIDIEM, INC.; CRAIG HUTCHINSON,<br><br>Counterclaim Defendants. | |

Before the court is Vicidiem, Inc. and Craig Hutchinson's (collectively, Vicidiem) partial motion to dismiss Paul Christensen's Countercomplaint. Vicidiem seeks an order dismissing four of Christensen's counterclaims: fraud, bad faith, common law indemnity, and statutory indemnity.[1]

---

[1] *See generally* ECF No. 79.

# I. BACKGROUND

Vicidiem provides internet, television, and telephone services to multi-unit residential and hospitality developments throughout Utah and surrounding states.[2] Plaintiff Hutchinson co-founded Vicidiem and remains its leading shareholder, holding 50% of outstanding shares.[3] Hutchinson's cousin, Brett Brimley, holds nearly 30% of the remaining shares.[4] Hutchinson exercises exclusive control over Vicidiem's finances, records, and actions as the Chief Executive Officer.[5] Christensen, former Chief Operating Officer, owns 10% of Vicidiem's shares and is a long-time acquaintance of Hutchinson.[6]

In late 2013, Christensen began working with Vicidiem and Hutchinson.[7] On January 6, 2014, Vicidiem, Hutchinson, and Christensen executed an agreement (the Agreement), under which Christensen became the COO of Vicidiem and earned a salary of at least $10,000 per month.[8] Christensen was also entitled to 10% equity in Vicidiem upon the occurrence of certain milestones, which were ultimately met.[9] If Vicidiem lacked sufficient revenue to pay Christensen, the compensation would be deferred.[10] During the first year of employment, Vicidiem paid Christensen $40,000 and deferred $80,000.[11] Christensen was never paid this deferred amount and never received employee health or other benefits.[12] And Christensen has

---

[2] ECF No. 37, Answer to First Amended Complaint and Counterclaim of Defendant Christensen, at 22, ¶ 4.
[3] ECF No. 37 at 22, ¶¶ 5, 6.
[4] ECF No. 37 at 22, ¶ 4.
[5] ECF No. 37 at 22, ¶ 7, 25 ¶ 27.
[6] ECF No. 37 at 22, ¶ 8, 23 ¶ 11.
[7] ECF No. 37 at 23, ¶ 14.
[8] ECF No. 37 at 23–24, ¶¶ 17, 18, 19.
[9] ECF No. 37 at 24, ¶¶ 20, 21, 22.
[10] ECF No. 37 at 24–25, ¶ 25.
[11] ECF No. 37 at 24–25, ¶¶ 25, 26, 27.
[12] ECF No. 37 at 25, ¶¶ 28, 29; 32–33, ¶¶ 82, 83, 85.

never received stock certificates or a distribution or other payment related to his share in Vicidiem.[13]

On May 29, 2015, Vicidiem agreed to sell an investor 10,000 shares (10% ownership) for $500,000.[14] Christensen alleges that "Hutchinson made the same representations to [the investor] that Hutchinson had made to Christensen to induce his investment, i.e. that Hutchinson had not and would not take any compensation or personal benefit from Vicidiem."[15] Additionally, in June 2016, Aaron Owens—one of the co-founders of Vicidiem—terminated his employment and agreed to sell his shares back to Vicidiem.[16] Although Vicidiem acquired 25,000 shares from Owens, Hutchinson allocated 15,000 of those shares to himself.[17]

Hutchinson hired and pays Kelly Ward a full-time salary.[18] Ward also works full-time for her stepfather's development company, Hancock Builders.[19] Because she was not working full time, Christensen objected to Vicidiem paying Ward.[20] Hutchinson insisted that her salary was warranted because she sold Vicidiem services.[21] In addition to a salary, Ward received a $2 per door per month commission for television services sold.[22] Although the vendor agreed to pay the commissions to Ms. Ward, the vendor billed the commission payments to Vicidiem instead.[23]

---

[13] ECF No. 37 at 31, ¶ 71.
[14] ECF No. 37 at 26–27, ¶ 40.
[15] *Id.*
[16] ECF No. 37 at 26–27, ¶¶ 34, 43, 44.
[17] ECF No. 37 at 27, ¶ 44.
[18] ECF No. 37 at 29, ¶ 53.
[19] ECF No. 37 at 29, ¶¶ 53, 54.
[20] *Id.*
[21] *Id.*
[22] ECF No. 37 at 29, ¶ 56.
[23] *Id.*

Brimley, Hutchinson's cousin and the second-largest Vicidiem shareholder, requested a distribution to "him as a shareholder."[24] Despite representing to Christensen that Vicidiem did not have the resources, Hutchinson "informed Christensen that he had caused Vicidiem to make distribution payments to Brimley, 'to make him happy.'"[25] "[N]o distributions were made to the other shareholders."[26]

For five years, Christensen worked full-time with Vicidiem raising capital, preparing marketing materials, making sales presentations, drafting contracts, and evaluating new services.[27] Vicidiem provided Christensen an office, a phone, business cards, an email account, and a computer.[28] On March 29, 2019, Hutchinson terminated Christensen's employment with Vicidiem.[29]

## II. LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[30] Dismissal is required when the complaint, standing alone, is insufficient to state a claim upon which relief may be granted.[31] To be facially plausible, each claim must be supported by well-pleaded facts allowing the court to "draw the reasonable inference that the defendant is liable for

---

[24] ECF No. 37 at 30, ¶¶ 63, 64.

[25] ECF No. 37 at 30–31, ¶¶ 65, 66, 67.

[26] ECF No. 37 at 31, ¶ 69.

[27] ECF No. 37 at 25, ¶ 30.

[28] ECF No. 37 at 25–26, ¶ 31.

[29] ECF No. 37 at 32, ¶ 81.

[30] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

[31] *See Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.").

the misconduct alleged."[32] A claim is deficient and subject to dismissal if a plaintiff offers in support only "labels and conclusions," "a formulaic recitation of the elements," or "naked assertions devoid of further factual enhancement."[33] Reviewing a motion to dismiss, the court construes the complaint in favor of the plaintiff.[34]

### III. DISCUSSION

**A. Christensen Has Not Pleaded Fraud with Particularity.**

Under Utah law, to establish fraud, a party must show:

> (1) That a representation was made; (2) concerning a presently existing material fact; (3) which was false; (4) which the representor either (a) knew to be false, or (b) made recklessly, knowing that he had insufficient knowledge upon which to base such representation; (5) for the purpose of inducing the other party to act upon it; (6) that the other party, acting reasonably and in ignorance of its falsity; (7) did in fact rely upon it; (8) and was thereby induced to act; (9) to his injury and damage.[35]

Additionally, Federal Rule of Civil Procedure 9(b) requires a party asserting fraud to "state with particularity the circumstances constituting fraud or mistake."[36] Specifically, a complaint alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."[37]

The Counterclaim states that "Hutchinson has perpetrated a fraud on Vicidiem and its shareholders by intentionally using material misrepresentations . . . .in order to avoid payments

---

[32] *Iqbal*, 556 U.S. at 678.

[33] *Id.* (citations, brackets, and internal quotation marks omitted).

[34] *Ash Creek Min. Co. v. Lujan*, 969 F.2d 868, 870 (10th Cir. 1992).

[35] *Franco v. The Church of Jesus Christ of Latter-day Saints*, 2001 UT 25, ¶ 33, 21 P.3d 198.

[36] Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

[37] *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quoting *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991)).

to shareholders . . . ."[38] The only misrepresentation that follows that statement is that Hutchinson was "[a]ll the while representing that he receives no personal compensation from Vicidiem."[39] Earlier in the Counterclaim, Christensen alleges that on May 29, 2015, Vicidiem executed an agreement with an investor in which the investor purchased 10,000 Vicidiem shares.[40] To induce this investment, Hutchinson stated that he "had not and would not take any compensation or personal benefit from Vicidiem."[41] Christensen then alleges "Hutchinson made the same representations to [this investor] that Hutchinson had made to Christensen."[42] This is insufficient under Federal Rule of Civil Procedure 9(b). The Counterclaim does not allege when Hutchinson's statement to Christensen was made or where it was made, so the required time and place elements are missing. Also, while the Counterclaim contains other statements Hutchinson allegedly made, none of them are specifically referenced in the fraud count, none of them identify the time and place of the statement, and it is not clear whether Plaintiff is alleging present falsity, inducement, and reliance.[43] Consequently, the fraud claim is insufficiently pleaded under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.[44]

---

[38] ECF No. 37 at 38, ¶ 119.

[39] ECF No. 37 at 38, ¶ 120.

[40] ECF No. 37 at 26–7, ¶ 40.

[41] ECF No. 37 at 26–7, ¶ 40.

[42] ECF No. 37 at 26–7, ¶ 40.

[43] *See* ECF No. 37 at 24–5, ¶¶ 26, 27; 27 at ¶ 45; 29 at ¶¶ 53, 54.

[44] *See Iqbal*, 556 U.S. at 678; *Koch*, 203 F.3d at 1236. Christensen contends that a relaxed standard should apply here, citing *State v. Apotex Corp.*, 2012 UT 36, 282 P.3d 66. ECF No. 87 at 16–17. This argument is unavailing, since the Federal Rules of Civil Procedure, not the Utah Rules of Civil Procedure, govern this case. *See* Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States district courts . . . ."). Even if it were applicable here, Christensen does not allege that it would be impossible or unwieldy to allege the details of every false claim submitted.

Relatedly, Christensen argues that any pleading deficiencies result from Vicidiem and Hutchinson's exclusive control over Vicidiem's financial records. ECF No. 87 at 18; *see George v. Urban Settlement Servs.*, 833 F.3d 1242, 1255 (10th Cir. 2016) ("[I]n determining whether a plaintiff has satisfied Rule 9(b), courts may consider whether any pleading deficiencies resulted from the plaintiff's inability to obtain information in the defendant's exclusive

### B. Christensen Has Plausibly Alleged a Bad Faith Claim.

"Inherent in every contract is 'an implied covenant of good faith and fair dealing.'"[45] "Under the covenant of good faith and fair dealing, both parties to a contract impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract."[46] Reviewing a breach of covenant claim, the court may consider the dealings of the parties in addition to the express contractual provisions.[47] However, the court "will not interpret the implied covenant of good faith and fair dealing to make a better contract for the parties than they made for themselves."[48] Nor does the court "construe the covenant to establish new, independent rights or duties not agreed upon by the parties."[49]

Christensen asserts that he, Hutchinson, and Vicidiem had an agreement and therefore have implied covenants of good faith and fair dealing.[50] Christensen then alleges that "Plaintiffs have breached those duties causing harm to Christensen."[51] The Counterclaim alleges that the agreement gave him a minimum monthly salary, that the salary could be deferred if there were insufficient revenue or capital, and that $80,000 of his compensation was deferred and never paid on those grounds.[52] The Counterclaim further alleges that Christensen was to receive up to 10% equity in Vicidiem, that he did receive the 10% equity, but that stock distributions were never

---

control."). As noted above, Christensen's fraud claim is deficient in ways which do not depend on his access to financial reports.

[45] *Far W. Bank v. Robertson*, 2017 UT App 213, ¶ 29 (quoting *Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 14).
[46] *Eggett*, 2004 UT 28, ¶ 14.
[47] *Brown v. Moore*, 973 P.2d 950, 954 (Utah 1998).
[48] *Id.*
[49] *Id.*
[50] ECF No. 37 at 34, ¶ 102.
[51] ECF No. 37 at 35, ¶ 103.
[52] ECF No. 37 at 24–5, ¶¶ 19, 25, 26, 27.

made to him.[53] The Counterclaim then alleges that Hutchinson allegedly wasted Vicidiem's assets by allowing another of Hutchinson's business, MWorks, to avoid rent obligations, charge Vicidiem inflated rates for shared employees, and use Vicidiem employees for MWorks business, among other things.[54] The Counterclaim further alleges that Hutchinson wasted Vicidiem assets by paying grossly inflated compensation to an employee for improper purposes, paying for personal travel and personal property, and causing distributions payments to be made to his cousin but not to other shareholders.[55] It is reasonable to infer from these allegations that Christensen is asserting that the alleged waste of corporate assets prevented the full payment of his salary and also prevented stock distribution payments to him.[56]

### C. Christensen's Indemnity Claims Are Speculative.

The Counterclaim asserts claims for common law and statutory indemnity. "A common-law indemnity action is based on a theory of quasi-contract or contract implied in law,"[57] and is "wholly distinct from the underlying action which gave rise to the right of indemnity."[58] To establish indemnity, "courts universally require proof of three elements: (1) the payor (prospective indemnitee) must discharge a legal obligation the payor owes to a third person; (2) the prospective indemnitor must also be liable to the third person; and (3) as between the claimant payor and the prospective indemnitor, the obligation ought to be discharged by the

---

[53] ECF No. 37 at 24, ¶¶ 20, 22; 31, ¶ 69.

[54] ECF No. 37 at 27–9, ¶¶ 50, 51.

[55] ECF No. 37 at 29–31, ¶¶ 53, 56, 60, 61, 66, 69.

[56] The court notes that the Counterclaim is not clear about whether some of the alleged misconduct was expressly prohibited by the contract. *See* ECF No. 37 at 24, ¶¶ 23, 25. Any overlap between the express contractual provisions and the implied covenants may be addressed later.

[57] *Davidson Lumber Sales, Inc. v. Bonneville Inv., Inc.*, 794 P.2d 11, 19 (Utah 1990).

[58] *Id.*

indemnitor."[59] "A common-law indemnity action does not arise when the underlying damage occurs; rather, it runs from the time of the payment of the underlying claim or the payment of a judgment or a settlement."[60] In other words, it does not arise until "the liability of the party seeking indemnity results in his damage, either through payment of a sum clearly owed or through the injured party's obtaining an enforceable judgment."[61]

Here, Christensen has not pleaded that he incurred a liability that should be borne by Hutchinson or Vicidiem in the first instance. Christensen alleges, "To the extent, if any, Christensen is liable to Vicidiem, such liability is the result of the unlawful conduct of Hutchinson."[62] Possible future liability that could result in a payment someday clearly does not meet the requirement of "payment of the underlying claim or the payment of a judgment or a settlement."[63] Consequently, Christensen has not asserted a viable claim for common law indemnity and his tenth cause of action must be dismissed.

Christensen's eleventh cause of action alleges, in its entirety, that "Christensen is entitled to indemnity pursuant to Utah Code Ann § 16-10a-907."[64] Under the Utah Revised Business Corporation Act,

> Unless limited by its articles of incorporation, a corporation shall indemnify a director who was successful, on the merits or otherwise, in the defense of any proceeding, or in the defense of any claim, issue, or matter in the proceeding, to which he was a party because he is or was a director of the corporation, against reasonable expenses incurred by him in connection with the proceeding or claim with respect to which he has been successful.[65]

---

[59] *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984).

[60] *Davidson Lumber Sales*, 794 P.2d at 19.

[61] *Perry*, 681 P.2d at 218.

[62] ECF No. 37 at 39, ¶ 137.

[63] *Davidson Lumber Sales*, 794 P.2d at 19.

[64] ECF No. 37 at 40, ¶ 142.

[65] Utah Code Ann. § 16-10a-903. This provision is extended to a corporation's officers. *Id.* § 16-10a-907(1).

Christensen argues that he is entitled to indemnity because, after he filed his Countercomplaint, the court denied Vicidiem's motion for temporary restraining order and preliminary injunction.[66] Whether common law or statutory, a claim for indemnity arises when a party discharges a legal obligation that is also owed by the indemnitor and that the indemnitor ought to have paid.[67] In the statute's terms, Christensen contends that he has "successfully defended a 'claim, issue, or matter in the proceeding'" and therefore argues he is entitled to his reasonable expenses.[68] Christensen cites no case law supporting his view. He also fails to explain how Vicidiem's failure to meet the standard for injunctive relief means that he successfully defended a claim.

The only judicial interpretation of the mandatory indemnification provision under the Utah Revised Business Corporation Act is the Utah Supreme Court's discussion in *Strohm v. ClearOne Commc'ns, Inc.*, 2013 UT 21, 308 P.3d 424. Strohm, a corporate officer of ClearOne Communications, was indicted on eight criminal charges following a securities investigation related to her work at ClearOne.[69] ClearOne initially paid Strohm's legal bills before refusing further payments.[70] Ultimately, Strohm was acquitted of all but one count and she sought indemnification under Sections 903 and 907.[71] The district court ordered ClearOne to indemnify Strohm for successfully defending seven of the criminal charges and the Utah Supreme Court affirmed. The Court held, "section 903 requires a corporation to indemnify a director who successfully defended himself in a proceeding where he was a party to the action because he

---

[66] *See* ECF No. 37 at 40; ECF No. 87 at 22–3.

[67] *Perry*, 681 P.2d at 218.

[68] ECF No. 87 at 23.

[69] *Strohm v. ClearOne Commc'ns, Inc.*, 2013 UT 21, ¶¶ 3, 7, 308 P.3d 424.

[70] *Id.* at ¶ 8.

[71] *Id.* at ¶¶ 9, 10; Utah Code Ann. § 16-10a-903, -907.

was/is a director of the corporation."[72] Here, Christensen does not allege in his Countercomplaint success in defending any claims. Additionally, although he alleges that he was an officer of Vicidiem, Christensen does not allege that he is a party to this matter because of his position with Vicidiem. Neither does he allege that Vicidiem's articles of incorporation do not limit any potential indemnification.[73] For these reasons, Christensen's wholly conclusory assertion that he is entitled to indemnity is insufficient to survive a motion to dismiss.

## ORDER

For the reasons stated in this Memorandum Decision and Order, Vicidiem's Motion to Dismiss is GRANTED IN PART AND DENIED IN PART. Counterclaim Plaintiff's causes of action for fraud, common law indemnity, and statutory indemnity are DISMISSED without prejudice. Counterclaim Defendants' motion to dismiss Christensen's Bad Faith claim is DENIED.

Signed November 30, 2020.

BY THE COURT

_____
David Barlow
United States District Judge

---

[72] *Strohm,* 2013 UT 21, ¶ 22.
[73] *See* Utah Code Ann. §§ 16-10a-903, -907.